**BRODIE & RUBINSKY, P.C**
BY:    JOSHUA P. RUBINSKY, ESQUIRE
IDENTIFICATION NO. 46496
BY:    AMY E. GALER, ESQUIRE
IDENTIFICATION NO. 209414
BY:    BRIAN DILKS-BROTMAN, ESQUIRE
IDENTIFICATION NO. 312024
121 BROAD STREET, SUITE 800
PHILADELPHIA, PA 19107
TELEPHONE: (215) 925-1470
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CICHONKE | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. |
| v. | : | |
| | : | |
| BRISTOL TOWNSHIP; | : | |
| WILLIAM MCCAULEY; | : | |
| SCOTT SWICHAR; | : | |
| JOHN DOE BRISTOL | : | |
| TOWNSHIP COUNCILMAN | : | |
| 1, 2,  3, 4, & 5; And | : | |
| JANE DOE BRISTOL | : | |
| TOWNSHIP COUNCILWOMAN | : | JURY TRIAL |
| Defendants. | | DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, John Cichonke, by and through his attorneys, and states his Complaint based upon the following causes of action:

## I.    NATURE OF COMPLAINT

1. This is an action under the Family and Medical Leave Act (29 U.S.C. § 2601 *et seq.* ("FMLA"), 42 USC § 1983, for violation of his rights under the Fourth  Amendment to the Constitution of the United States of America, the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. Seq. ("ADEA"), and for breach of contract.

## II.     JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised     federal claims herein under the ADEA, FMLA, and 42 USC § 1983.

## III.     PARTIES

3.     Plaintiff, John Cichonke, is an adult individual residing at 2725 Filbert Ave., Croydon, PA 19021, born on August 17, 1953, who was employed by Defendant  Bristol Township from December 1988 through June 18, 2013.

4.     Defendant, Bristol Township (hereafter "Bristol Township") is a Pennsylvania municipality   located in Bucks County, Pennsylvania with a business address of  2501 Bath Road, Bristol PA 17121.

5.     Defendant, Bristol Township has the power to sue and be sued pursuant to 53 Pa.  C.S. § 5607(d)(2).

6.     Defendant Bristol Township is a person within the meaning of 42 USC § 1983.

7.     Defendant William McCauley (hereafter "McCauley" or "Township Manager" is  an adult individual employed from the beginning of 2012 to the present as       Township Manager by Defendant Bristol Township, with a business address of  2501     Bath     Road, Bristol PA 17121. He is sued in his individual capacity, and in       his official capacity as Township Manager for Bristol Township.

8.     Defendant Scott Swichar is an adult individual employed as Sewer Department     Project Manager and Operations Analyst by Defendant Bristol Township from       early  2012  to the present, with a business address of 2501 Bath Road, Bristol PA     17121.  Switcher was one of Plaintiff's direct supervisors. He is sued in his   individual   capacity,   and in   his official capacity as Sewer Department Project   Manager   and   Operations   Manager   for Bristol Township.

9.     Defendant John Doe 1 is an adult individual serving as a member of the Bristol Township Council during the relevant time, with a business address of 2501 Bath Road, Bristol PA 17121. He is sued in his individual capacity, and in his official     capacity     as Township Council Member for Bristol Township.

10.     Defendant John Doe 2 is an adult individual serving as a member of the Bristol Township Council during the relevant time, with a business address of 2501 Bath Road, Bristol PA 17121. He is sued in his individual capacity, and in his official     capacity     as Township Council Member for Bristol Township.

11.     Defendant John Doe 3 is an adult individual serving as a member of the Bristol Township Council during the relevant time, with a business address of 2501 Bath Road,

Bristol PA 17121. He is sued in his individual capacity, and in his official   capacity   as Township Council Member for Bristol Township.

12.   Defendant John Doe 4 is an adult individual serving as a member of the Bristol Township Council during the relevant time, with a business address of 2501 Bath Road, Bristol PA 17121. He is sued in his individual capacity, and in his official   capacity   as Township Council Member for Bristol Township.

13.   Defendant John Doe 5 is an adult individual serving as a member of the Bristol Township Council during the relevant time, with a business address of 2501 Bath Road, Bristol PA 17121. He is sued in his individual capacity, and in his official   capacity   as Township Council Member for Bristol Township.

14.   Defendant Jane Doe is an adult individual serving as a member of the Bristol Township Council during the relevant time, with a business address of 2501 Bath Road, Bristol PA 17121. She is sued in his individual capacity, and in her official   capacity   as Township Council Member for Bristol Township.

## IV.   FACTUAL BACKGROUND

15.   Plaintiff hereby incorporates Paragraphs 1 through 14 as if fully set forth herein.

16.   Plaintiff was employed by Defendant Bristol Township in its Sewer Treatment   Plant operations from December, 1988 to June 18, 2013.

17.   In 2010 Plaintiff was diagnosed with Trigeminal Neuralgia, a Serious Health Condition under the FMLA. The Trigeminal Neuralgia caused Plaintiff to regularly have severe and debilitating pain.

18.   In February 2011 Plaintiff underwent surgery to try to alleviate symptoms of his Trigeminal Neuralgia.

19.   Unfortunately, following this surgery, Plaintiff continued to suffer from frequent, severe, and debilitating flare-ups of Trigeminal Neuralgia.

20.   As a result of the flare-ups of Trigeminal Neuralgia, Plaintiff would occasionally need to be out of work.

21.   In early January 2013, while performing work duties, Plaintiff experienced   sudden and severe chest pain and was brought to a local hospital to be seen.   Plaintiff was initially diagnosed with a pulled muscle and was placed on light   duty   for   several   weeks. However, the pulled muscle diagnosis proved to be   mistaken.

22.   On February 19, 2013, Plaintiff applied for Intermittent FMLA leave by filling   out and submitting to the Township the required FMLA form and Certification of   Employee's Serious Health Condition, signed by Doctor Dani S. Bidros   (Hereafter   "First

Certification"). The First Certification identified Plaintiff's    Trigeminal Neuralgia as the Serious Health Condition.

23.    The next day, February 20, 2013, Plaintiff had severe chest pain. As a result he    went to an area Hospital where he was found to have blood clots. He was then    immediately admitted into the intensive care unit for treatment.

24.    After several days in the hospital, and time to recuperate, Plaintiff returned to    work at the Township.

25.    On March, 4, 2013, Plaintiff was advised by the Township Human Relations Director that he would need to obtain a second Certification of Employee's    Serious Health Condition (Hereafter "Second Certification").

26.    In the conversation referenced in the Paragraph above, Plaintiff was informed that Plaintiff's First Certification was not being accepted by the Township Manager. Specifically, Plaintiff was told that Township Manager McCauley wouldn't approve FMLA leave related to his Trigeminal Neuralgia condition, because    despite the First Certification's completion and undisputed validity, Defendant    McCauley did not believe that Trigeminal Neuralgia was a serious medical    condition.

27.    Under the FMLA and its regulations, an employer may only require an employee  to obtain a second Certification of Employee's Serious Health Condition as a    second opinion if it has reason to doubt the validity of the original Certification.

28.    At the time the Township requested the Second Certification from Plaintiff, the Township was aware of the requirement that an employer may only require an employee to obtain a second Certification of Employee's Serious Health    Condition as a second opinion if it has reason to doubt the validity of the original    Certification.

29.    On March, 4, 2013, Plaintiff obtained a Second Certification. Plaintiff later provided the second Certification to the Township Human Relations Director.

30.    The Township did not have any bona fide basis permitted under the FMLA to question the validity of the Plaintiff's First Certification

31.    The Township did not have any bona fide basis permitted under the FMLA to request the second opinion.

32.    Defendant McCauley had the obligation to authorize Plaintiff's Request for Family and Medical Leave.

33.    Upon information and belief, Defendant McCauley and Defendant Bristol Township have accepted the Certification of Employee's Serious Health

Condition submitted by employees younger than Plaintiff, including but not limited to W.B. and K.B., without requiring the employee to obtain a second certification.

34.     Defendant McCauley and Defendant Bristol Township failed to properly process Plaintiff's Request for Family and Medical Leave when they failed to sign off on the applicable FMLA forms.

35.     On June 6, 2013, Plaintiff called in sick due to a flare-up of Trigeminal     Neuralgia.

36.     At some point during the day on June 6, 2013, Plaintiff left his house to pick up medicine from a local drug store. While at the drug store, Plaintiff received a     phone call from the president of his local Veterans of Foreign Wars chapter (hereinafter "VFW"), requesting assistance with paperwork in the VFW office.

37.     Plaintiff, then a longtime VFW member, active volunteer, and past president of     the chapter, agreed to stop by the office on his way home from the drug store     to assist. After leaving the drug store, Plaintiff parked his truck in the VFW     parking lot and proceeded to the club office, where he assisted the current VFW     president     with     paperwork     for approximately thirty (30) minutes to an hour.

38.     The VFW is a members-only club that permits outside guests only on a limited     basis.

39.     The VFW's security measures include a closed-circuit security camera, locked     doors, a VFW employee responsible for security enforcement, and a buzzer  system.

40.     In order to gain entrance to the VFW, visitors must ring the buzzer, and present a membership card to the VFW employee responsible for security enforcement.

41.     Visitors seeking entry to the VFW who are not members are required to explain     the purpose of their visit, and are only permitted entrance on a limited basis.

42.     On the direction of Defendant McCauley, Defendant Swichar and former Human Resources Officer Paula Kearns drove to the VFW in order to "investigate" whether Plaintiff was drinking at that time.

43.     Upon finding that the door to the VFW was locked, Defendant Swichar rang the     buzzer to request entrance.

44.     When questioned by the VFW employee responsible for security enforcement, Defendant Swichar provided a false reason for his purpose in seeking entrance,     stating that the Township was interested in potentially renting the VFW for an     event.

45.     The Township had no intention of renting the VFW for an event. Defendant Swichar was, in fact, engaging in a search for the Plaintiff.

46.   Defendant Swichar provided a false reason because he did not believe that he       would have been granted consent to enter in order to engage in a search for        Plaintiff.

47.   Based upon his false statement of purpose, Defendant Swichar improperly obtained entrance to the VFW, at which point he conducted a search for Plaintiff.

48.   Defendant Bristol Township, through its agent Scott Swichar, conducted a search of   the VFW facility without first obtaining a search warrant or any other court approval  and/or supervision.

49.   On the evening of June 6th, 2013, Defendant Swichar continued his surveillance   of Plaintiff by driving past Plaintiff's house, at least twice, slowing the speed of his   vehicle significantly each time he passed by Plaintiff's house.

50.   On June 10th, 2013, Defendant Bristol Township, through its agent Defendant Swichar, required Plaintiff to submit to a Breathalyzer alcohol test during work     hours. Defendants asserted at the time of the test that the basis for the alcohol test was reasonable suspicion.

51.   The standard for reasonable suspicion for requiring a drug or alcohol test   according   to Defendant Bristol Township's policy and procedures is as follows:

> The Required observations for alcohol and/or controlled substances reasonable suspicion testing must be based on specific contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors of the employee and must be made by a supervisor or manager who is trained in accordance with the following requirements:
>     (a) Supervisors/managers designated to determine whether reasonable suspicion exists to require an employee to undergo alcohol or controlled substance testing must receive at least one hour of training on alcohol misuse and at least one hour of training on controlled substances.
>     (b) The training provided by the contractor must cover the physical, behavioral, speech, and performance indicators of probable alcohol misuse and use of controlled substances.

52.   On June 10, 2013 Defendant Swichar directed Plaintiff to leave work for a Breathalyzer test without observing Plaintiff, having no knowledge of Plaintiff's behavior at the relevant time, and having formed no specific contemporaneous, articulable observation of Plaintiff's appearance, behavior, speech, or body odor, as required by Defendant Bristol Township's policy and        procedures.

53.   At the time of Defendants' testing of Plaintiff, Defendant Swichar had not received the mandatory training for   supervisors/managers designated to determine whether reasonable suspicion exists for requiring an employee to undergo alcohol or controlled substance testing, as required by Defendant Bristol Township's policy and procedures.

54.    Defendant Bristol Township failed to provide Defendant Swichar with the mandatory training for supervisors/managers to determine whether reasonable suspicion  exists  for requiring an employee to undergo alcohol or controlled substance testing as described above, despite knowledge of its requirement.

55.    Defendant Swichar directed Plaintiff to undergo a Breathalyzer test despite not   having received the mandatory training.

56.    Defendant McCauley ordered and/or authorized Defendant Swichar to conduct   the Breathalyzer test.

57.    Defendants ordered, authorized, and executed the Breathalyzer test without reasonable suspicion.

58.    After the Breathalyzer test produced negative results for alcohol, Defendant Swichar directed Plaintiff to return to work.

59.    Upon information and belief, Defendants have not required employees younger   than Plaintiff to submit to a Breathalyzer test during work hours despite previously   having been suspected of drinking alcohol during work hours, including but not limited to former employee K.T..[1]

60.    As a result of being required to submit to an alcohol test during work hours, Plaintiff became extremely upset. He requested, and was approved for, four days  of vacation time (from June 11, 2013 through June 14, 2013) to recover from the stress. However, the Township failed and refused to compensate Plaintiff for the four days of approved vacation time.

61.    On June 18, 2013, Plaintiff's serious medical conditions required him to take a   day  of FMLA leave.

62.    On June 18, 2013, Plaintiff had completed and submitted to the Township all required FMLA forms, and was eligible for FMLA leave.

63.    On June 18, 2013, notwithstanding the facts asserted in paragraphs 61 and 62 above, Defendant Bristol Township, through its agent Defendant Swichar, hand-delivered a letter to Plaintiff, informing him that he had exhausted his sick leave, that his sick leave  had not been approved, and that he must report to work or face disciplinary action  or discharge.

64.    Under the Township's existing no fault policy on exhausting sick leave,   employees are not subject to disciplinary action or discharge for missing a day of  work after exhausting available sick days.

---

[1] Plaintiff will provide Defendants with the full names of all current and former employees identified herein by first and last initial only, without a discovery request, pursuant to an agreement to protect the identities and all private information for all identified parties.

65. Under the policy described in paragraph 64, Plaintiff would not have been subject to disciplinary action or discharge for missing work on June 18, 2013.

66. The threat of discharge or disciplinary action by Defendants constitutes  harassment of Plaintiff for requesting and using leave under the FMLA.

67. On June 18, 2013, Plaintiff resigned from his position. The resignation was due to the harassment and retaliation he experienced.

68. On June 19, 2013, Plaintiff requested from the Township copies of his FMLA documents, including his Request for Family and Medical Leave as well as both Certifications of Serious Medical Condition that he had provided. Plaintiff was informed that "it's all still on Bill's (Township Manager William McCauley's)  desk" awaiting signature, and did not provide the requested documents.

69. Throughout the weeks of June 20, 2013 through July 10, 2013, Plaintiff called the Township to inquire about receiving his FMLA documents on several occasions, and was told each time that they were "still on Bill's (Defendant McCauley's) desk." Defendant Bristol Township did not provide Plaintiff with the requested documents.

70. Upon information and belief, Defendants have not failed to sign and/or process  FMLA documents for employees younger than Plaintiff, including but not limited to  W.B.  and K.B..

71. Upon leaving employment Plaintiff was eligible for his accrued and unused 144 hours of vacation time to be paid at his hourly rate $22.47 for a total amount of  $3235.68.

72. The Collective Bargaining Agreements require the Township to provide bargaining unit member employees with 100% of accrued and unused vacation time upon  resignation or retirement.

73. Plaintiff, on numerous occasions, has requested his accrued and unused vacation  time, and was told that his payment was forthcoming.

74. Plaintiff has not received payment for his accrued and unused vacation time.

75. A check for Plaintiff's accrued and unused vacation was printed by Defendant  Bristol Township, but Defendant McCauley refused to sign the check or allow the payment to be made.

76. Upon information and belief, Defendant McCauley refused to process and make payment to Plaintiff for accrued and unused vacation time because Plaintiff had asserted claims with state and federal agencies under the Collective Bargaining Agreement, as well as under other state and federal laws.

77.   Upon information and belief, Defendants have provided 100% of accrued and unused vacation time to employees younger than Plaintiff upon resignation or retirement, including but not limited to B.G., Z.M., and K.T.

## STATEMENT OF CLAIMS

### COUNT I
**Alcohol Testing Without Reasonable Suspicion**
**In Violation of the Fourth Amendment**
**To the Constitution of the United States**
**Of America**

**Plaintiff v. Defendant Bristol Township**

78.   Plaintiff hereby incorporates Paragraphs 1 through 77 as if fully set forth herein.

79.   Defendant Bristol Township, acting under color of law, by and through its agent   Scott Swichar, directed Plaintiff to take a Breathalyzer test against his will on    June 10, 2013.

80.   A Breathalyzer test is a search within the meaning of the Fourth Amendment to    the Constitution of the United States of America.

81.   Defendant Bristol Township, through agent Defendant Swichar, ordered Plaintiff  to submit to a Breathalyzer test with no knowledge of Plaintiff's behavior at  the    relevant time, and having formed no specific contemporaneous,   articulable   observation   of Plaintiff's appearance, behavior, speech, or body odor.

82.   Defendant Bristol Township knowingly failed to provide Defendant Swichar with the training required by supervisors/managers designated to determine whether reasonable suspicion exists for requiring an employee to undergo alcohol or controlled substance testing, despite a clear likelihood that failure to provide such training would result in the violation of Plaintiff's constitutional rights.

83.   Defendant Bristol Township's failure to provide the required training described above despite a clear likelihood that failure to provide such training would result in the violation of Plaintiff's constitutional rights constitutes deliberate indifference toward Plaintiff's Fourth Amendment rights.

84.   Defendant Bristol Township did not establish reasonable suspicion of intoxication before authorizing and executing the Breathalyzer test.

85.   The Breathalyzer test produced negative results for alcohol.

86.   By subjecting Plaintiff to an alcohol test without reasonable suspicion, Defendant  Bristol Township violates Plaintiff's Fourth Amendment right to be free of Unreasonable Search and Seizure.

87. Defendant Bristol Township, acting under color and pretense of the law, engaged in the illegal conduct herein mentioned to the injury of the Plaintiff, and deprived the Plaintiff of the rights, privileges, and immunities secured to the Plaintiff by the Fourth Amendment to the Constitution of the United States of America, thus violating the Plaintiff's Civil Rights under 42 USC § 1983.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Fourth Amendment to the United States Constitution; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's Fourth Amendment rights; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

### COUNT II
### Alcohol Testing Without Reasonable Suspicion
### In Violation of the Fourth Amendment
### To the Constitution of the United States
### Of America

### Plaintiff v. Defendant William McCauley

88. Plaintiff hereby incorporates Paragraphs 1 through 88 as if fully set forth herein.

89. A Breathalyzer test is a search within the meaning of the Fourth Amendment to the Constitution of the United States of America.

90. Defendant McCauley, through agent Defendant Swichar, ordered Plaintiff to submit to a Breathalyzer test with no knowledge of Plaintiff's behavior at the relevant time, and having formed no specific contemporaneous, articulable observation of Plaintiff's appearance, behavior, speech, or body odor.

91. Defendant William McCauley, acting as a municipal policymaker, knowingly ordered and/or sanctioned the Breathalyzer test conducted upon Plaintiff without reasonable suspicion.

92. Defendant McCauley did not establish reasonable suspicion of intoxication before authorizing and executing the Breathalyzer test.

93. The Breathalyzer test produced negative results for alcohol.

94. By subjecting Plaintiff to an alcohol test without reasonable suspicion, Defendant McCauley violates Plaintiff's Fourth Amendment right to be free of Unreasonable Search and Seizure.

95.   Defendant McCauley, acting in his official capacities as well as individually,   jointly, and severally and in concert with other Defendants, acting under color and pretense of the law, engaged in the illegal conduct herein mentioned to the injury  of the Plaintiff, and deprived the Plaintiff of the rights, privileges, and immunities secured to the Plaintiff by the Fourth Amendment to the Constitution of  the   United States of America, thus violating the Plaintiff's Civil Rights under  42 USC   § 1983.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Fourth Amendment to the United States Constitution; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's Fourth Amendment rights; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

### COUNT III
### Alcohol Testing Without Reasonable Suspicion
### In Violation of the Fourth Amendment
### To the Constitution of the United States
### Of America

### Plaintiff v. Defendant Scott Swichar

96.   Plaintiff hereby incorporates Paragraphs 1 through 96 as if fully set forth herein.

97.   Defendant Scott Swichar, acting under color of law, directed Plaintiff to take a Breathalyzer test against his will on  June 10, 2013.

98.   A Breathalyzer test is a search within the meaning of the Fourth Amendment to    the Constitution of the United States of America.

99.   Defendant Swichar ordered Plaintiff to submit to a Breathalyzer test with no knowledge of Plaintiff's behavior at the relevant time, and having formed no specific contemporaneous, articulable observation of Plaintiff's appearance, behavior, speech, or body odor.

100.   Defendant Swichar ordered Plaintiff to submit to a Breathalyzer test without        having received the training required by supervisors/managers designated to        determine whether reasonable suspicion exists for requiring an employee to    undergo alcohol or controlled substance testing.

101.   Defendant Swichar did not establish reasonable suspicion of intoxication before authorizing and executing the Breathalyzer test.

102. The Breathalyzer test produced negative results for alcohol.

103. By subjecting Plaintiff to an alcohol test without reasonable suspicion, Defendant Swichar violates Plaintiff's Fourth Amendment right to be free of Unreasonable Search and Seizure.

104. Defendant Swichar, acting in his official capacities as well as individually, jointly, and severally and in concert with other Defendants, acting under color and pretense of the law, engaged in the illegal conduct herein mentioned to the injury of the Plaintiff, and deprived the Plaintiff of the rights, privileges, and immunities secured to the Plaintiff by the Fourth Amendment to the Constitution of the United States of America, thus violating the Plaintiff's Civil Rights under 42 USC § 1983.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Fourth Amendment to the United States Constitution; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's Fourth Amendment rights; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

### COUNT IV
### Search of Private VFW Club to Which Plaintiff Belongs As a Member
### In Violation of the Fourth Amendment to the
### Constitution of the United States of America

### Plaintiff v. Defendant Bristol Township

105. Plaintiff hereby incorporates Paragraphs 1 through 104 as if fully set forth herein.

106. As a member of the VFW, a private club, Plaintiff had a reasonable expectation of privacy within its facility.

107. The VFW facility had multiple security measures in place to secure the privacy of its members. These security measures include, but are not limited to, locked doors, a buzzer system, closed circuit security cameras, and a VFW employee responsible for security enforcement.

108. Non-members are only permitted entrance on a limited basis, at the discretion of the VFW. The security measures described in paragraph 87 above are in place, at least in part, to prevent the entrance of non-members into the VFW facility.

109. Defendant Bristol Township, acting under color of law, by and through its agent Scott Swichar, conducted a search within the meaning of the Fourth Amendment to the Constitution of the United States of America.

110.  By, without first obtaining a search warrant or other court approval and/or supervision, subjecting Plaintiff to a search in a members-only facility in which Plaintiff was a member, with security measures in place specifically to protect the privacy of members, thereby establishing a reasonable expectation of privacy, Defendant Bristol Township violates Plaintiff's Fourth Amendment right to be free of Unreasonable Search and Seizure.

111.  Defendant Bristol Township, acting under color and pretense of the law, engaged in the illegal conduct herein mentioned to the injury of the Plaintiff, and deprived the Plaintiff of the rights, privileges, and immunities secured to the Plaintiff by the Fourth Amendment to the Constitution of the United States of America, thus violating the Plaintiff's Civil Rights under 42 USC § 1983.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Fourth Amendment to the United States Constitution; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's Fourth Amendment rights; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT VI
### Search of Private VFW Club to Which Plaintiff Belongs As a Member
### In Violation of the Fourth Amendment to the
### Constitution of the United States of America

### Plaintiff v. Defendant Scott Swichar

112.  Plaintiff hereby incorporates Paragraphs 1 through 111 as if fully set forth herein.

113.  As a member of the VFW, a private club, Plaintiff had a reasonable expectation of privacy within its facility.

114.  The VFW facility had multiple security measures in place to secure the privacy of its members. These security measures include, but are not limited to, locked doors, a buzzer system, closed circuit security cameras, and a VFW employee responsible for security enforcement.

115.  Non-members are only permitted entrance on a limited basis, at the discretion of the VFW. The security measures described in paragraph 87 above are in place, at least in part, to prevent the entrance of non-members into the VFW facility.

116.  Defendant Scott Swichar willingly provided a knowingly false pretense for seeking entrance to the VFW facility, and did so based upon the understanding that conducting a search for a VFW member was not a permissible use of the facility.

117. Upon gaining entrance to the VFW facility through false pretenses, Defendant Swichar conducted a search for Plaintiff inside the facility.

118. Although Defendant Swichar failed to locate Plaintiff within the facility, Defendant Swichar's conduct is a search within the meaning of the Fourth Amendment to the Constitution of the United States of America.

119. By, without first obtaining a search warrant or other court approval and/or supervision, subjecting Plaintiff to a search in a members-only facility in which Plaintiff was a member, with security measures in place specifically to protect the privacy of members, thereby establishing a reasonable expectation of privacy, Defendant Swichar violates Plaintiff's Fourth Amendment right to be free of Unreasonable Search and Seizure.

120. Defendant Swichar, in his official capacity as well as individually, jointly, and severally and in concert with other Defendants, acting under color and pretense of the law, engaged in the illegal conduct herein mentioned to the injury of the Plaintiff, and deprived the Plaintiff of the rights, privileges, and immunities secured to the Plaintiff by the Fourth Amendment to the Constitution of the United States of America, thus violating the Plaintiff's Civil Rights under 42 USC § 1983.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Fourth Amendment to the United States Constitution; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's Fourth Amendment rights; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

### COUNT VII
### Search of Private Club to Which Plaintiff Belongs As A Member
### In Violation of the Fourth Amendment to the
### Constitution of the United States of America

### Plaintiff v. Defendant William McCauley

121. Plaintiff hereby incorporates Paragraphs 1 through 120 as if fully set forth herein.

122. As a member of the VFW, a private club, Plaintiff had a reasonable expectation of privacy within its facility.

123. The VFW facility had multiple security measures in place to secure the privacy of its members. These security measures include, but are not limited to, locked doors,

a buzzer system, closed circuit security cameras, and a VFW employee responsible for security enforcement.

124. Non-members are only permitted entrance on a limited basis, at the discretion of the VFW. The security measures described in paragraph 87 above are in place, at least in part, to prevent the entrance of non-members into the VFW facility.

125. Defendant McCauley directed Defendant Swichar to conduct a search of the VFW facility to ascertain if Plaintiff had been consuming alcohol.

126. Upon Defendant McCauley's instruction, Defendant Scott Swichar willingly provided a knowingly false pretense for seeking entrance to the VFW facility, and did so based upon the understanding that conducting a search for a VFW member was not a permissible use of the facility.

127. Upon Defendant McCauley's instruction, Defendant Swichar conducted a search for Plaintiff inside the facility.

128. Defendant McCauley, acting under color of law, by and through his agent Scott Swichar, conducted a search within the meaning of the Fourth Amendment to the Constitution of the United States of America.

129. By, without first obtaining a search warrant or other court approval and/or supervision, subjecting Plaintiff to a search in a members-only facility in which Plaintiff was a member, with security measures in place specifically to protect the privacy of members, thereby establishing a reasonable expectation of privacy, Defendant McCauley violates Plaintiff's Fourth Amendment right to be free of Unreasonable Search and Seizure.

130. Defendant McCauley, in his official capacity as well as individually, jointly, and severally, and in concert with other Defendants, acting under color and pretense of the law, engaged in the illegal conduct herein mentioned to the injury of the Plaintiff, and deprived the Plaintiff of the rights, privileges, and immunities secured to the Plaintiff by the Fourth Amendment to the Constitution of the United States of America, thus violating the Plaintiff's Civil Rights under 42 USC § 1983.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Fourth Amendment to the United States Constitution; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's Fourth Amendment rights; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT VIII

### Failure to Train in
### Violation of 42 U.S.C. § 1983

### Plaintiff v. Defendant Bristol Township

131.   Plaintiff hereby incorporates Paragraphs 1 through 130 as if fully set forth herein.

132.   At all relevant times, Defendants McCauley and Swichar were acting as agents and employees of Defendant Bristol Township.

133.   Acting under color and pretense of law, Defendant Bristol Township knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, or discipline on a continuing basis Defendants McCauley and Swichar:

   a.   To determine whether reasonable suspicion exists for requiring an employee to undergo alcohol or controlled substance testing based upon contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors;

   b.   In their duties to refrain from depriving Plaintiff of constitutional and statutory rights, privileges, and liberties; and/or

   c.   In their duties to refrain from conducting drug and alcohol testing without reasonable suspicion and without the required training.

134.   Defendant Bristol Township had knowledge, or should have had knowledge that the wrongs as heretofore alleged were about to be committed.

135.   Defendant Bristol Township had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

136.   Defendant Bristol Township, directly or indirectly, under color and pretense of law, approved or ratified the unlawful, malicious, reckless, and wanton conduct of Defendants McCauley and Swichar heretofore described.

137.   As a direct and proximate cause of the negligent and intentional acts of Defendant Bristol Township as set forth in paragraphs 119-124 above, Plaintiff suffered damages in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fourth Amendment of the Constitution of the United States and protected by 42 U.S.C. § 1983.

   WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the

acts, conduct and omissions of Defendant violate the Fourth Amendment to the United
States Constitution; an order enjoining Defendant and Defendant's employees, agents,
and any and all persons acting in concert with him from further violation of Plaintiff's
Fourth Amendment rights; compensatory damages, including punitive damages,
attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby
demanded.

## COUNT IX
### Violations of the Family Medical Leave Act
### Interference by Failing to Process Plaintiff's FMLA Documents

### Plaintiff v. Defendant Bristol Township

138.  Plaintiff hereby incorporates paragraphs 1 through 137 as if fully set forth herein.

139.  Plaintiff submitted fully complete and valid FMLA forms, with Certification of
      Employee's Serious Health Condition completed by medical doctors, to     Defendant
      Bristol Township.

140.  Defendant Bristol Township, by and through its agent William McCauley refused to
      accept Plaintiff's first submitted Certification of Employee's Serious Health
      Condition, dismissing it as "just" Trigeminal Neuralgia.

141.  Upon information and belief, Upon Plaintiff's submission of a second     Certification
      of Employee's Serious Health Condition, Defendant William     McCauley refused to
      sign, and Defendant Bristol Township failed to process     Plaintiff's FMLA documents,
      despite informing him that he was covered.

142.  Defendant Bristol Township committed interference violations of the FMLA by:  1)
      Refusing to     accept Plaintiff's first submitted Certification of Employee's     Serious
      Health Condition, dismissing it as "just" Trigeminal Neuralgia ; 2)     Failing to sign
      and process Plaintiff's fully complete and valid FMLA forms     in a reasonable
      timeframe, causing unreasonable delay; and 3) Incorrectly   informing Plaintiff that his
      FMLA documents had been properly handled     and     processed when, in fact, his
      application was never processed.

143.  By committing these acts as described above, Defendant Bristol Township has
      interfered with, restrained, and denied Plaintiff's exercise and/or attempt to
      exercise his rights under the FMLA, in clear violation of U.S.C. § 2615(a)(1).

      WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against
      Defendant individually, jointly, and severally, and award judgment declaring that the
      acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29
      U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents,
      and any and all persons acting in concert with them from further violation of Plaintiff's

rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT X
### Violations of the Family Medical Leave Act
### Interference by Failing to Process Plaintiff's FMLA Documents

### Plaintiff v. Defendant William McCauley

144.  Plaintiff hereby incorporates paragraphs 1 through 143 as if fully set forth herein.

145.  Plaintiff submitted fully complete and valid FMLA forms, with Certification of Employee's Serious Health Condition completed by medical doctors, to     Defendant Bristol Township.

146.  Defendant William McCauley refused to accept Plaintiff's first submitted  Certification of Employee's Serious Health Condition, dismissing it as "just"     Trigeminal Neuralgia.

147.  Plaintiff's submission of a second Certification of Employee's Serious Health Condition, Defendant William McCauley refused to sign, and Defendant Bristol Township failed to process Plaintiff's FMLA documents, despite informing him    that he was covered.

148.  Defendant McCauley committed interference violations of the FMLA by: 1) Refusing to accept Plaintiff's first submitted Certification of Employee's Serious  Health Condition, dismissing it as "just" Trigeminal Neuralgia ;  2) Failing to sign         and process Plaintiff's  fully complete and valid FMLA forms in a reasonable  timeframe, causing unreasonable delay; and 3) Incorrectly informing Plaintiff that     his FMLA documents had been properly handled and processed when, in fact,           his application was never processed.

149.  By committing these acts as described above, Defendant McCauley has interfered with, restrained, and denied Plaintiff's exercise and/or  attempt to exercise his    rights under the FMLA, in clear violation of U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XI
## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
## INTERFERENCE BY COUNTING FMLA-QUALIFYING LEAVE AGAINST PLAINTIFF

### Plaintiff v. Defendant Bristol Township

150.   Plaintiff hereby incorporates Paragraphs 1 through 149 as if fully set forth herein.

151.   Although Plaintiff had submitted fully complete and valid FMLA forms,   Defendant Bristol Township, by and through its agent Scott Swichar, delivered a     letter on or about June 18, 2013, informing Plaintiff that he had exhausted his sick     leave, that his sick leave had not been approved, and that he must report to work   or   face   disciplinary action or discharge.

152.   Defendant Bristol Township counted FMLA-qualifying leave against Plaintiff for purposes of disciplinary action and termination.

153.   By committing these acts as described above, Defendant Bristol Township has interfered with, restrained, and denied Plaintiff's exercise and/or attempt to exercise his rights under the FMLA, in clear violation of U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq*.); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XII
## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
## INTERFERENCE BY COUNTING FMLA-QUALIFYING LEAVE AGAINST PLAINTIFF

### Plaintiff v. Defendant Scott Swichar

154.   Plaintiff hereby incorporates Paragraphs 1 through 153 as if fully set forth herein.

155.   Although Plaintiff had submitted fully complete and valid FMLA forms,   Defendant Scott Swichar, delivered a letter on or about June 18, 2013, informing     Plaintiff   that he had exhausted his sick leave, that his sick leave had not   been     approved,   and that he must report to work or face disciplinary action or     discharge.

156. Defendant Scott Swichar counted FMLA-qualifying leave against Plaintiff for purposes of disciplinary action and termination.

157. By committing these acts as described above, Defendant Swichar interfered with, restrained, and denied Plaintiff's exercise and/or attempt to exercise his rights under the FMLA, in clear violation of U.S.C. § 2615(a)(1).

   WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq*.); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XIII
## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
## INTERFERENCE BY REQUIRING PLAINTIFF TO OBTAIN
## A SECOND CERTIFICATE OF SERIOUS MEDICAL CONDITION
## IN VIOLATION OF 29 CFR § 825.307(b)(1).

### Plaintiff v. Defendant William McCauley

158. Plaintiff hereby incorporates Paragraphs 1 through 157 as if fully set forth herein.

159. On February 19, 2013, Plaintiff submitted to the Township a valid Certification of Serious Medical Condition with his Request for Family and Medical Leave, in which a doctor identifies Trigeminal Neuralgia as a serious medical condition.

160. On March, 4, 2013, Plaintiff was advised by the Township Human Relations Director that he should obtain a second Certification of Employee's Serious Health Condition, because Defendant McCauley did not want to accept FMLA for "just" Trigeminal Neuralgia.

161. Under the FMLA and its companion regulations, an employer may only require an employee to obtain a second Certification of Employee's Serious Health Condition as a second opinion if it has reason to doubt the validity of the original Certification. All costs associated with the second opinion are to be at the employer's expense, and the employee is provisionally entitled to FMLA benefits. 29 CFR § 825.307(b)(1).

162. Defendant McCauley did not question the validity of Plaintiff's Certification of Employee's Serious Health Condition.

163. However, Defendant McCauley still required Plaintiff to obtain a second Certification of Employee's Serious Health Condition.

164. By committing these acts as described above, Defendant McCauley have interfered with, restrained, and denied Plaintiff's exercise and/or attempt to exercise his rights under the FMLA, in clear violation of U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

### COUNT XIII
### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
### INTERFERENCE BY REQUIRING PLAINTIFF TO OBTAIN
### A SECOND CERTIFICATE OF SERIOUS MEDICAL CONDITION
### IN VIOLATION OF 29 CFR § 825.307(b)(1).

### Plaintiff v. Defendant Bristol Township

165. Plaintiff hereby incorporates Paragraphs 1 through 164 as if fully set forth herein.

166. On February 19, 2013, Plaintiff submitted to the Township a valid Certification of Serious Medical Condition with his Request for Family and Medical Leave, in which a doctor identifies Trigeminal Neuralgia as a serious medical condition.

167. On March, 4, 2013, Plaintiff was advised by Defendant Bristol Township, through the Township Human Relations Director that he should obtain a second Certification of Employee's Serious Health Condition, because Defendant McCauley did not want to accept FMLA for "just" Trigeminal Neuralgia.

168. Under the FMLA and its companion regulations, an employer may only require an employee to obtain a second Certification of Employee's Serious Health Condition as a second opinion if it has reason to doubt the validity of the original Certification. All costs associated with the second opinion are to be at the employer's expense, and the employee is provisionally entitled to FMLA benefits. 29 CFR § 825.307(b)(1).

169. Defendant Bristol Township did not question the validity of Plaintiff's Certification of Employee's Serious Health Condition.

170. However, Defendant Bristol Township still required Plaintiff to obtain a second Certification of Employee's Serious Health Condition.

171. Defendant Bristol Township did not cover Plaintiff's costs incurred in obtaining a second Certification of Employee's Serious Health Condition.

172. By committing these acts as described above, Defendants have interfered with, restrained, and denied Plaintiff's exercise and/or attempt to exercise his rights under the FMLA, in clear violation of U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

### COUNT XIV
### Violations of the Family Medical Leave Act
### Retaliation

### Plaintiff v. Defendant Bristol Township

173. Plaintiff hereby incorporates paragraphs 1 through 172 as if full set forth herein.

174. Plaintiff Cichonke informed Defendant Bristol Township of a serious health condition that made him periodically unable to perform the essential functions of his employment on or around February, 2013.

175. Pursuant to the Family and Medical Leave Act, Plaintiff would have been entitled to twelve (12) weeks of unpaid leave per year from the time of his serious health condition.

176. Upon notification of Plaintiff's condition, Defendant, through its agents Scott Swichar, William McCauley, committed retaliation violations of the FMLA by: 1) harassing Plaintiff about the severity of his condition, including but not limited to telling Plaintiff that he would not be approved for FMLA for "just" Trigeminal Neuralgia and requiring Plaintiff to acquire a second Certification ; 2) conducting undue and harassing surveillance of Plaintiff; 3) forcing Plaintiff to undergo an unnecessary and baseless Breathalyzer test during work hours for the purpose of harassment; and 4) Threatening Plaintiff with disciplinary action or discharge for using FMLA eligible leave.

177. By committing the acts described above, Defendant Bristol Township have taken adverse action against Plaintiff for requesting and/or using leave under the FMLA, in clear violation of 29 U.S.C. § 2615(a)(2).

178. As a direct result of the adverse actions described above, conditions of employment became so intolerable that a reasonable person in Plaintiff's situation would be forced to resign.

179. Under these circumstances, Plaintiff's resignation on June 18, 2013 was involuntary and amounted to a constructive discharge.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XV
### Violations of the Family Medical Leave Act
### Retaliation

### Plaintiff v. Defendant Scott Swichar

180. Plaintiff hereby incorporates paragraphs 1 through 179 as if full set forth herein.

181. Plaintiff Cichonke informed Defendant Swichar of a serious health condition that made him periodically unable to perform the essential functions of his employment on or around February, 2013.

182. Pursuant to the Family and Medical Leave Act, Plaintiff would have been entitled to twelve (12) weeks of unpaid leave per year from the time of his serious health condition.

183. Upon notification of Plaintiff's condition, Defendant Swichar, committed retaliation violations of the FMLA by: 1) conducting undue and harassing surveillance of Plaintiff; 2) forcing Plaintiff to undergo an unnecessary and baseless Breathalyzer test during work hours for the purpose of harassment; 3) Threatening Plaintiff with disciplinary action or discharge for using FMLA eligible leave.

184. By committing the acts described above, Defendant Swichar has taken adverse action against Plaintiff for requesting and/or using leave under the FMLA, in clear violation of 29 U.S.C. § 2615(a)(2).

185. As a direct result of the adverse actions described above, conditions of employment became so intolerable that a reasonable person in Plaintiff's situation would be forced to resign.

186.   Under these circumstances, Plaintiff's resignation on June 18, 2013 was     involuntary and amounted to a constructive discharge.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XVI
## Violations of the Family Medical Leave Act
## Retaliation

### Plaintiff v. Defendant William McCauley

187.   Plaintiff hereby incorporates paragraphs 1 through 186 as if full set forth herein.

188.   Plaintiff Cichonke informed Defendant McCauley of a serious health     condition that made him periodically unable to perform the essential functions of his employment on or around February, 2013.

189.   Pursuant to the Family and Medical Leave Act, Plaintiff would have been entitled to twelve (12) weeks of unpaid leave per year from the time of his serious health condition.

190.   Upon notification of Plaintiff's condition, Defendant McCauley, committed retaliation violations of the FMLA by: 1) harassing Plaintiff about the severity of his condition, including but not limited to telling Plaintiff that he would not be approved for FMLA for "just" Trigeminal Neuralgia and requiring Plaintiff to     acquire a second Certification ;  2) directing Defendant Swichar to conduct undue  and harassing surveillance of Plaintiff; 3) forcing Plaintiff to undergo an   unnecessary and baseless Breathalyzer test during work hours for the purpose of harassment; 4) Threatening Plaintiff with disciplinary action or discharge for     using FMLA eligible leave.

191.   By committing the acts described above, Defendant McCauley has taken   adverse action against Plaintiff for requesting and/or using leave under the         FMLA, in clear violation of 29 U.S.C. § 2615(a)(2).

192.   As a direct result of the adverse actions described above, conditions of     employment became so intolerable that a reasonable person in Plaintiff's situation     would be forced to resign.

193. Under these circumstances, Plaintiff's resignation on June 18, 2013 was     involuntary and amounted to a constructive discharge.

   WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*); an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's rights under the Family Medical Leave Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XVII
## Breach Of Contract

### Plaintiff v. Defendant Bristol Township

194. Plaintiff hereby incorporates paragraphs 1 through 193 as if fully set forth herein.

195. During all relevant times, Plaintiff was covered by a collective bargaining  agreement between the Transportation Workers Union of America, Local 282 and        Defendant Bristol Township.

196. The aforementioned Collective Bargaining Agreement provides for the payment    of accrued and unused vacation time upon resignation or retirement for qualified employees.

197. At the time that Plaintiff's employment with Defendant Bristol Township ended, Plaintiff had one hundred and forty four (144) hours of accrued and unused vacation time at an hourly rate of $22.48, for a total of $3,237.18.

198. To date, Defendant Bristol Township has failed and refused to provide Plaintiff     with payment for accrued and unused vacation time, in violation of the   Collective Bargaining Agreement.

   WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendants individually, jointly, and severally, and award compensatory damages, including back pay and punitive damages, attorneys' fees and costs, and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XVIII
## Disparate Treatment in Violation of the
## Age Discrimination in Employment Act

### Plaintiff v. Defendant Bristol Township

199.   Plaintiff hereby incorporates paragraphs 1 through 198 as if fully set forth herein.

200.   Plaintiff was born on August 17, 1953, and is therefore within the age group protected by the ADEA.

201.   Defendant Bristol Township failed and refused to process Plaintiff's properly submitted and completed FMLA application. Upon information and belief, Defendant Bristol Township has successfully processed the FMLA applications of employees younger than Plaintiff, including but not limited to W.B. and     K.B..

202.   Defendant Bristol Township, without a legitimate reason to question the     authenticity of Plaintiff's properly submitted first Certification of Employee's     Serious Health Condition, required Plaintiff to acquire a second Certification of     Employee's Serious Health Condition. Upon information and belief, Defendant  Bristol Township did not require employees younger than Plaintiff to acquire a     second Certification of Employee's Serious Health Condition, including but not     limited to W.B. and K.B..

203.   Defendant Bristol Township failed and refused to provide Plaintiff with payment   for accrued and unused vacation time upon resignation. Upon information and         belief, Defendant Bristol Township provided payment for accrued and unused     vacation time to employees younger than Plaintiff, including but not limited to     B.G., Z.M., and K.T..

204.   Defendant Bristol Township, by and through its agents, Defendants McCauley     and Swichar, ordered Plaintiff to undergo an illegal Breathalyzer test on June 10,     2013 during work hours. Upon information and belief, Defendant Bristol         Township did not subject employees         younger than Plaintiff to illegal Breathalyzer      tests during work hours despite suspicion of alcohol use, including but not         limited to K.T..

205.   Defendant Bristol Township, by and through its agent Defendant Swichar,  threatened Plaintiff with termination or discipline for being absent from work  despite FMLA qualification. Upon information and belief, Defendant Bristol Township did not similarly threaten employees younger than Plaintiff, including but not limited to W.B. and K.B..

206.   The actions of Defendant Bristol Township, as described above in Paragraphs 201-205, reflect disparate treatment of Plaintiff due to his age.

207.   Defendant Bristol Township's disparate treatment of Plaintiff due to his age was    willful.

208.   Defendant's willful disparate treatment of Plaintiff due to his age violated Section 623(a)

of the ADEA.

209.   As a direct result of the disparate treatment described above, conditions of employment became so intolerable that a reasonable person in Plaintiff's situation      would be forced to resign.

210.   Under these circumstances, Plaintiff's resignation on June 18, 2013 was      involuntary and amounted to a constructive discharge.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. Seq.; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's rights under the Age Discrimination in Employment Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XIX
### Violations of the Age Discrimination in Employment Act

### Plaintiff v.  Defendant William McCauley

211.   Plaintiff hereby incorporates paragraphs 1 through 210 as if fully set forth herein.

212.   Plaintiff was born on August 17, 1953, and is therefore within the age group protected by the ADEA.

213.   Defendant McCauley failed and refused to process Plaintiff's properly      submitted and completed FMLA application. Upon information and belief,      Defendant McCauley has successfully processed the FMLA applications of      employees younger than Plaintiff, including but not limited to W.B. and      K.B..

214.   Defendant McCauley, without a legitimate reason to question the authenticity of Plaintiff's properly submitted first Certification of Employee's Serious Health Condition, required Plaintiff to acquire a second Certification of Employee's      Serious Health Condition. Upon information and belief, Defendant  McCauley did not require employees younger than Plaintiff to acquire a second Certification  of Employee's Serious Health Condition, including but not limited to Wayne      Beyer and K.B..

215.   Defendant McCauley failed and refused to provide Plaintiff with payment  for accrued and unused vacation time upon resignation. Upon information and      belief, Defendant McCauley provided payment for accrued and unused      vacation time to employees younger than Plaintiff, including but not limited to      B.G., Z.M., and K.T..

216.   Defendant McCauley, by and through his agent Defendant Swichar, ordered Plaintiff to undergo an illegal Breathalyzer test on June 10, 2013 during work      hours.

Upon information and belief, Defendant McCauley did not subject employees younger than Plaintiff to illegal Breathalyzer tests during work hours despite suspicion of alcohol use, including but not limited to K.T..

217. Defendant McCauley, by and through his agent Defendant Swichar, threatened Plaintiff with termination or discipline for being absent from work despite FMLA qualification. Upon information and belief, Defendant McCauley did not similarly threaten employees younger than Plaintiff, including but not limited to W.B. and K.B.

218. The actions of Defendant McCauley, as described above in Paragraphs 213- 217, reflect disparate treatment of Plaintiff due to his age.

219. Defendant McCauley's disparate treatment of Plaintiff due to his age was willful.

220. Defendant's willful disparate treatment of Plaintiff due to his age violated Section 623(a) of the ADEA.

221. As a direct result of the disparate treatment described above, conditions of employment became so intolerable that a reasonable person in Plaintiff's situation would be forced to resign.

222. Under these circumstances, Plaintiff's resignation on June 18, 2013 was involuntary and amounted to a constructive discharge.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. Seq.; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's rights under the Age Discrimination in Employment Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded.

## COUNT XX
### Violations of the Age Discrimination in Employment Act

#### Plaintiff v. Defendant Scott Swichar

223. Plaintiff hereby incorporates paragraphs 1 through 222 as if fully set forth herein.

224. Plaintiff was born on August 17, 1953, and is therefore within the age group protected by the ADEA.

225. Defendant Swichar ordered Plaintiff to undergo an illegal Breathalyzer test on June 10, 2013 during work hours. Upon information and belief, Defendant Swichar did not subject employees younger than Plaintiff to illegal Breathalyzer tests during

work hours despite suspicion of alcohol use, including but not limited to K.T..

226. Defendant Swichar threatened Plaintiff with termination or discipline for being absent from work despite FMLA qualification. Upon information and belief, Defendant Swichar did not similarly threaten employees younger than Plaintiff, including but not limited to W.B. and K.B..

227. The actions of Defendant Swichar, as described above in Paragraphs 225 & 226, reflect disparate treatment of Plaintiff due to his age.

228. Defendant Swichar's disparate treatment of Plaintiff due to his age was willful.

229. Defendant's willful disparate treatment of Plaintiff due to his age violated Section 623(a) of the ADEA.

230. As a direct result of the disparate treatment described above, conditions of employment became so intolerable that a reasonable person in Plaintiff's situation would be forced to resign.

231. Under these circumstances, Plaintiff's resignation on June 18, 2013 was involuntary and amounted to a constructive discharge.

WHEREFORE, Plaintiff requests this Honorable Court to enter Judgment against Defendant individually, jointly, and severally, and award judgment declaring that the acts, conduct and omissions of Defendant violate the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. Seq.; an order enjoining Defendant and Defendant's employees, agents, and any and all persons acting in concert with him from further violation of Plaintiff's rights under the Age Discrimination in Employment Act; compensatory damages, including punitive damages, attorneys' fees and costs; and other relief as is appropriate and trial by jury is hereby demanded

**JURY TRIAL DEMANDED**

Respectfully Submitted,

**BRODIE & RUBINSKY, P.C.**

By: _____

Joshua P. Rubinsky, Esquire
Attorney I.D. No. 46496
Brian Dilks-Brotman, Esquire
Attorney I.D. No. 312024
121 South Broad Street, Suite 800
Philadelphia, Pennsylvania  19107
Email: rubinsky@brodierubinsky.com
Email: b.dilks-brotman@brodierubinsky.com
Telephone:     (215) 925-1470
Facsimile:     (215) 925-3748
Attorneys for Plaintiff

Date: *July 15, 2014*

\\BRSERVERPC\Group\B&R 1 JPR\Clients\Cichonke, John\Cichonke FMLA & Drug Test 2013\Complaint\Cichonke FMLA Complaint v18 071414.docx

Page **30** of 30

1

# VERIFICATION

I, John Cichonke, Sr., being duly sworn according to law, hereby verify that the facts set forth in the foregoing Complaint are true and accurate to the best of my knowledge, information and belief. I understand that any false statement made herein is subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_____
John Cichonke, Sr.

DATED:

7-14-14