## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN CICHONKE,                          :
                                        :      CIVIL ACTION
              Plaintiff,         :
                                        :
  v.                                   :
                                        :      NO.  14-4243
BRISTOL TOWNSHIP, et al.,               :
                                        :
              Defendants.        :

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                         March 25, 2015

      Currently pending before the Court is the Motion by Defendants[1] Bristol Township,

William McCauley, and Scott Swichar (collectively, "Defendants") to Dismiss Plaintiff John

Cichonke ("Plaintiff")'s Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, the Motion is granted in part and denied in part.

## I.    FACTUAL BACKGROUND

      Plaintiff John Cichonke ("Plaintiff") was employed by Defendant Bristol Township from

December 1988 through June 18, 2013 in its Sewer Treatment Plant operations.  (Am. Compl. ¶¶

3, 19.)  Defendant William McCauley ("McCauley") has been employed by Defendant Bristol

Township as Township Manager since early 2012.  (Id. ¶ 10.)  Defendant Scott Swichar

("Swichar") has been employed by Defendant Bristol Township as a Sewer Department Project

---

[1] In the "Parties" section of the Amended Complaint, Plaintiff also lists five John Doe
Defendants and one Jane Doe Defendant who he is suing in their individual capacities and in
their official capacities as Township Council Members for Bristol Township.  (Id. ¶¶ 12–17.)
Plaintiff does not indicate which, if any, of the factual allegations in the Amended Complaint are
alleged as to the John and Jane Doe Defendants.

Manager and Operations Analyst since early 2012.  (Id. ¶ 11.)  Defendant Swichar was one of Plaintiff's direct supervisors.  (Id.)

In 2010, Plaintiff was diagnosed with Trigeminal Neuralgia, a condition which caused him to regularly have severe and debilitating pain and which is listed as a Serious Health Condition under the Family and Medical Leave Act ("FMLA").  (Id. ¶ 20.)  Plaintiff underwent surgery for that condition in February 2011, but continued to suffer from frequent, severe, and debilitating flare-ups.  (Id. ¶¶ 21–22.)  As a result of those flare-ups, Plaintiff occasionally needed to be out of work.  (Id. ¶ 23.)

In January 2013, Plaintiff was performing work duties when he experienced sudden and severe chest pain.  (Id. ¶ 24.)  He went to a local hospital and was incorrectly diagnosed with a pulled muscle.  (Id.)  Plaintiff was thereafter placed on light duty for several weeks.  (Id.)  On February 19, 2013,[2] Plaintiff applied for Intermittent FMLA leave by filling out and submitting to Bristol Township the required FMLA form and Certification of Employee's Serious Health Condition, signed by Doctor Dani S. Bidros ("First Certification"), which listed Plaintiff's Trigeminal Neuralgia as the Serious Health Condition.  (Id. ¶ 25.)  On February 20, 2013, Plaintiff had severe chest pain and went to a local hospital where doctors determined that he had blood clots and immediately admitted him to the intensive care unit.  (Id. ¶ 28.)  Several days later, he returned to work.  (Id. ¶ 29.)  On March 4, 2013, the Bristol Township Human Relations Director told Plaintiff that he would need to obtain a second Certification of Employee's Serious Health Condition ("Second Certification") because the First Certification was not being accepted by Defendant McCauley, the Bristol Township Manager.  (Id. ¶¶ 30, 32.)  Plaintiff was told that Defendant McCauley would not approve FMLA leave related to Plaintiff's Trigeminal Neuralgia

_____

[2] At that time, Plaintiff had been employed by Defendant Bristol Township for more than twelve months and had worked at least 1,250 hours in the previous twelve month period.  (Am. Compl. ¶¶ 26–27.)

because he did not believe that it was a serious medical condition.  (Id. ¶ 32.)  Plaintiff did not receive written notification regarding what additional information was necessary to make the First Certification complete and sufficient.  (Id. ¶ 31.)  On March 4, 2013, Plaintiff obtained a Second Certification and later provided it to the Bristol Township Human Relations Director.  (Id. ¶ 37.)

On June 6, 2013, Plaintiff called in sick to work due to a flare-up of Trigeminal Neuralgia.  (Id. ¶ 45.)  At some point that day, he left his house to pick up medicine at a local drug store.  (Id. ¶ 46.)  While Plaintiff was at the drug store, the president of his local Veterans of Foreign Wars chapter ("VFW") called Plaintiff and asked for his assistance with some paperwork at the VFW office.  (Id.)  Plaintiff agreed to stop by the VFW office on his way home from the drug store.  (Id. ¶ 47.)  He parked his truck in the VFW parking lot and spent approximately thirty minutes to one hour assisting the VFW president with paperwork in the club office.  (Id.)

The VFW is a members-only club that permits outside guests on a limited basis.  (Id. ¶ 48.)  Security measures include a closed-circuit security camera, locked doors, a buzzer system, and a VFW employee responsible for security enforcement.  (Id. ¶ 49.)  To gain entrance to the club, visitors ring the buzzer and present a membership card to the security enforcement employee.  (Id. ¶ 50.)  Those seeking entry to the VFW who are not members must explain the purpose of their visit and are permitted to enter on a limited basis.  (Id. ¶ 51.)

On June 6, 2013, at the direction of Defendant McCauley,[3] Defendant Swichar and former Human Resources Officer Paula Kearns drove to the VFW to investigate whether

---

[3] In 2012, Bristol Township adopted the "Manager-Council" form of municipal governance, in which the Township Manager acts as the "chief executive and administrative official of the Township."  (Am. Compl. ¶ 53 (quoting Bristol Township Administrative Code § 5-15(L).)  The Township Manager is responsible for "planning, organizing, administering, and directing all

Plaintiff was drinking alcohol.  (Id. ¶ 52.)  Defendant Swichar rang the buzzer and told the VFW employee who answered that Bristol Township was interested in potentially renting the VFW space for an event, even though that was not true and he was actually there to look for Plaintiff. (Id. ¶¶ 57–58.)  Plaintiff alleges that Defendant Swichar provided a false reason for his presence because he did not believe he would have been allowed in for the purpose of looking for Plaintiff.  (Id. ¶ 59.)  After gaining entry to the VFW, Defendant Swichar looked for Plaintiff. (Id. ¶ 60.)  According to Plaintiff, Defendant Swichar did not locate him inside the VFW.  (Id. ¶ 143.)  On the evening of June 6, 2013, Defendant Swichar drove past Plaintiff's house at least two times.  (Id. ¶ 62.)

On June 10, 2013, Defendant Swichar, acting under Defendant McCauley's orders and/or authorization, required Plaintiff to submit to a Breathalyzer alcohol test during work hours.  (Id. ¶¶ 63, 71.)  Defendant Swichar stated that the basis for the test was reasonable suspicion.  (Id.) Defendant Bristol Township's policy[4] regarding alcohol testing states the following:

> The required observations for alcohol and/or controlled substances reasonable suspicion testing must be based on specific contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors of the employee and must be made by a supervisor or manager who is trained in accordance with the following requirements:
> (a) Supervisors/managers designated to determine whether reasonable suspicion exists to require an employee to undergo alcohol or controlled substance testing must receive at least one hour of training on alcohol misuse and at least one hour of training on controlled substances.
> (b) The training provided by the contractor must cover the physical, behavioral, speech, and performance indicators of probable alcohol misuse and use of controlled substances.

---

operations under the Jurisdiction of the Township."  (Id.)  Defendant McCauley has been Acting Township Manager or Township Manager for Bristol Township since 2012.  (Id. ¶ 54.)

[4] Bristol Township adopted the policy pursuant to a Settlement Agreement not related to this case.  (Id. ¶ 65.)

(Id. ¶ 64.)  Plaintiff alleges that Defendant Swichar did not have reasonable suspicion sufficient to require Plaintiff to undergo testing, and that Defendant Swichar had not received Bristol Township's mandatory training regarding alcohol testing for employees.  (Id. ¶¶ 66–68.) Plaintiff alleges, upon information and belief, that Defendants have not required employees who are younger than Plaintiff to undergo alcohol testing during work hours, even though those employees had previously been suspected of drinking alcohol during work hours, including but not limited to former employee K.T.  (Id. ¶ 76.)

Plaintiff's Breathalyzer test was negative for alcohol, and Defendant Swichar directed Plaintiff to return to work.  (Id. ¶ 75.)  Plaintiff was "extremely upset" by the testing, so he requested, and was approved for, four days of vacation time for June 11, 2013 to June 14, 2013, "to recover from the stress" he experienced.  (Id. ¶ 77.)  Defendant Bristol Township did not compensate Plaintiff for the four days of vacation time.  (Id.)

On June 18, 2013, Plaintiff attempted to take one day of FMLA leave due to his medical conditions.  (Id. ¶ 78.)  Plaintiff completed and submitted the FMLA forms, but Defendant Swichar gave Plaintiff a letter informing him that he had exhausted his sick leave, that his sick leave had not been approved, and that he must report to work or face disciplinary action or discharge.  (Id. ¶¶ 79–80.)

Plaintiff resigned from his position on June 18, 2013, due to what Plaintiff believes was retaliation and harassment, as well as prior complaints of retaliation and harassment that had not been addressed.  (Id. ¶ 85.)  Plaintiff alleges that when he left his position, he was eligible for accrued and unused vacation time totaling 144 hours, to be paid at his hourly rate of $22.47 for a total amount of $3,235.68.  (Id. ¶ 89.)  Pursuant to a Collective Bargaining Agreement, Bristol Township is required to provide bargaining unit member employees with one hundred percent of

accrued and unused vacation time upon resignation or retirement.  (Id. ¶ 90.)  Plaintiff requested his accrued and unused vacation time on several occasions, and though he was told payment was forthcoming, he has not yet received payment.  (Id. ¶¶ 91–92.)  Defendant Bristol Township printed a check for Plaintiff's vacation time, but Defendant McCauley refused to allow the payment to be made.  (Id. ¶ 93.)  Plaintiff alleges, upon information and belief, that Defendant McCauley refused to process and make payment for Plaintiff's accrued and unused vacation time because Plaintiff had asserted claims with state and federal agencies under the Collective Bargaining Agreement, as well as under other state and federal laws.  (Id. ¶ 94.)  Plaintiff further alleges, upon information and belief, that Defendants have provided one hundred percent of accrued and unused vacation time to employees who are younger than Plaintiff upon their resignation or retirement, including but not limited to B.G., Z.M., and K.T.  (Id. ¶ 95.)

On June 19, 2013, Plaintiff requested copies of his FMLA documents, but was told "it's all still on [Defendant McCauley's] desk" awaiting signature, and he did not receive copies of the requested documents.  (Id. ¶ 86.)  On several occasions throughout the weeks of June 20, 2013 through July 10, 2013, Plaintiff called Bristol Township to ask about his documents, and was told each time that the documents were still on Defendant McCauley's desk.  (Id. ¶ 87.)  Plaintiff alleges, upon information and belief, that Defendants have not failed to sign and/or process FMLA documents for employees who are younger than Plaintiff, including but not limited to W.B. and K.B.  (Id. ¶ 88.)

Plaintiff filed a Complaint in this case on July 15, 2014, and filed an Amended Complaint on October 14, 2014.  Defendants filed a Motion to Dismiss the Amended Complaint on November 3, 2014.  Plaintiff filed a Response in Opposition on November 14, 2014.  Defendants

filed their Reply on December 12, 2014.  Plaintiff filed a Sur-reply on December 24, 2014.

Defendants' Motion to Dismiss is now ripe for judicial consideration.

## II.      STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has

not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v.

United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S.

544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following

these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently

defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at

678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  Id. at 679. "Determining whether a complaint

states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Having considered the Amended Complaint and the parties' briefs, the Court finds that Plaintiff has sufficiently pled Counts Two, Three, and Seven through Twenty, and will deny Defendants' Motion to Dismiss with respect to those Counts. Counts One, Four, Five, and Six are not legally cognizable claims and therefore Defendants' Motion to Dismiss with respect to those Counts will be granted. The Court discusses each of Plaintiff's claims in turn.

A.      **Alcohol Testing Without Reasonable Suspicion (Counts I, II, and III)**

Plaintiff asserts Fourth Amendment claims, pursuant to 42 U.S.C. § 1983, against all Defendants for requiring him to take a Breathalyzer test on June 10, 2013 against his will and without the required training and knowledge and articulable observations.  (Am. Compl. ¶¶ 98, 100, 112–14, 120–25.)  Plaintiff further alleges that Defendant Bristol Township delegated authority to Defendant McCauley to override the procedural safeguards in Bristol Township's drug and alcohol testing policy with knowledge that no supervisory employees had received the requisite training, and that Defendant Bristol Township failed to provide that training to Defendant Swichar.  (Id. ¶¶ 101–02.)  Plaintiff asserts his Fourth Amendment claims against Defendants McCauley and Swichar in their official and individual capacities.  (Id. ¶¶ 118, 128.)

1.      **Defendant Bristol Township**

With respect to Count One against Defendant Bristol Township, Defendants' Motion to Dismiss must be granted.  Plaintiff essentially alleges that Defendant Bristol Township is liable for violations of Plaintiff's Fourth Amendment rights because it gave Defendant McCauley authority as Township Manager, which he used to order Defendant Swichar to violate Bristol Township's drug and alcohol testing policy, and thus Plaintiff's Fourth Amendment rights, in the absence of adequate training. [5]  First, the fact that Defendant McCauley had some degree of authority over certain Township matters does not mean that Defendant Bristol Township gave Defendant McCauley the authority to "override" Bristol Township's written drug and alcohol testing policy.  Second, Plaintiff cannot state a Fourth Amendment violation claim for municipal liability against Defendant Bristol Township solely on the basis of Defendants McCauley's and

_____

[5] The factual allegations supporting Count One are also duplicative of those supporting Plaintiff's claim in Count Seven, the failure to train claim, which is discussed below in Section III.C.

Swichar's conduct, because a claim for respondeat superior liability against a municipality is not

a legally cognizable claim.  See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520

U.S. 397, 403 (1997) ("[A] municipality may not be held liable under § 1983 solely because it

employs a tortfeasor.").[6]  Accordingly, Count One must be dismissed.[7]

### 2.   **Defendant McCauley and Defendant Swichar**

As stated above, in Counts Two and Three Plaintiff asserts § 1983 claims against

Defendants McCauley and Swichar in their official and individual capacities for violating his

Fourth Amendment rights by requiring him to take a Breathalyzer test in the absence of

reasonable suspicion.  "Cases interpreting the scope of the Fourth Amendment establish that drug

testing of public employees may raise search and seizure issues."  Dykes v. Se. Pa. Transp.

Auth., 68 F.3d 1564, 1567 (3d Cir. 1995) (citing Skinner v. Ry. Labor Execs.' Assoc., 489 U.S.

602 (1989); Nat'l Treasury Emps. Union v. Von Raab, 489 U.S. 656 (1989)).  "It is equally clear

that the Fourth Amendment applies only to unreasonable searches and seizures."  Id. (citing

Skinner, 489 U.S. at 619).  "What is reasonable 'depends on all of the circumstances surrounding

the search or seizure and the nature of the search or seizure itself.'"  Id. (quoting Skinner, 489

U.S. at 619).  Where an employee alleges that an employer's drug and/or alcohol testing policy

was not followed and that the employer sought to have the employee submit to testing in the

absence of reasonable suspicion, "[i]t is [the employer's] violation of its own policy that

allegedly renders the proposed search unreasonable."  Dykes, 68 F.3d at 1568.

---

[6] The parameters of municipal liability are discussed more thoroughly below in Section III.C, which addresses Plaintiff's "failure to train" claim.

[7] While Defendants argued for dismissal of Count One on other grounds, the Court need not address those arguments because Count One states an impermissible type of municipal liability claim.

"Ultimately, the question of whether a particular search is reasonable for purposes of the Fourth Amendment is not a question of fact."  Dykes, 68 F.3d at 1568 (citing Bolden v. Se. Pa. Transp. Auth., 953 F.2d 807, 822 (3d Cir. 1991) (en banc) ("Unlike a determination of 'reasonableness' in ordinary tort cases and some other contexts, this balancing process presents a question of law . . . ."), cert. denied, 504 U.S. 943 (1992)).  In order to decide whether a search was reasonable, it must first be determined whether there was reasonable suspicion underlying an employer's request that an employee submit to testing.[8]  Dykes, 68 F.3d at 1568.  "If there was

---

[8] Defendants assert that Plaintiff could be tested for drugs or alcohol in the absence of reasonable suspicion because of the nature of his job.  Specifically, Defendants argue that because Plaintiff formerly held "a leadership position in the Department of Sewers' Treatment Plant," he "cannot set [sic] a Fourth Amendment claim for submitting to a breathalyzer test."  (Defs.' Mem. Supp. Mot. Dismiss 4.)  Contrary to Defendants' argument, Plaintiff's workplace conditions and Defendants' claimed "special needs" do not equate to a justification of suspicion-less testing like that which the Supreme Court found in Skinner and similar cases.  Cf. Stanziale v. Cnty. of Monmouth, 884 F. Supp. 140, 147 (D.N.J. 1995) (finding that "the nexus between the [sanitary] inspector's misconduct and the potential injury is too attenuated to justify the removal of the protection afforded the employee by the individualized suspicion requirement," that the sanitary inspector's "job responsibilities do not pose an immediate threat to the public," and that unlike in cases such as Skinner, there would be an "opportunity to notice signs of impairment before significant harm occurs.").  As Defendants provide no elaboration regarding any safety considerations of Plaintiff's job position, or why suspicion-less testing was appropriate under the circumstances, this argument is not persuasive.  Moreover, Bristol Township adopted a policy requiring reasonable suspicion before employees are subject to drug and alcohol testing.  (See Am. Compl. ¶ 64.)  The existence of that policy negates Defendants' arguments that Plaintiff could be subjected to testing without the presence of reasonable suspicion because of safety concerns.

Defendants also argue that because Plaintiff submitted to a breath test, rather than a blood or urine test, privacy concerns are not implicated.  But Defendants' assertion that Plaintiff's claim should be dismissed because a urinalysis test implicates greater privacy concerns than a breath test ignores the Supreme Court's statement that "[s]ubjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis . . . implicates similar concerns about bodily integrity and, like the blood-alcohol test we considered in Schmerber, should also be deemed a search."  Skinner, 489 U.S. at 616–17 (citations omitted).  Defendants are correct that the Court also stated "[i]n all the circumstances, we cannot conclude that the administration of a breath test implicates significant privacy concerns."  That latter statement, however, does not require a conclusion that the lesser privacy concerns implicated by a breath test mean that a breath test is never a search subject to the requirements of the Fourth Amendment.  (See Defs.' Reply 2 (quoting Skinner, 489 U.S. at 626).)

reasonable suspicion, and [the employer], therefore, complied with the terms of its drug and alcohol testing policy, there is no Fourth Amendment issue; the policy, evaluated against the background of precedent, is reasonable in the broad constitutional sense." Id.   The dispositive issue is thus whether an employer had reasonable suspicion to subject the employee to testing. Id.

As stated above, Defendant Bristol Township's policy regarding drug and alcohol testing for its employees includes the following guidelines:

> The required observations for alcohol and/or controlled substances reasonable suspicion testing must be based on specific contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors of the employee and must be made by a supervisor or manager who is trained in accordance with the following requirements:
> (a) Supervisors/managers designated to determine whether reasonable suspicion exists to require an employee to undergo alcohol or controlled substance testing must receive at least one hour of training on alcohol misuse and at least one hour of training on controlled substances.
> (b) The training provided by the contractor must cover the physical, behavioral, speech, and performance indicators of probable alcohol misuse and use of controlled substances.

(Am. Compl. ¶ 64.)  Plaintiff alleges that Defendants did not have reasonable suspicion[9] and did not even observe him prior to requiring him to undergo a Breathalyzer test, which would be a clear violation of the Bristol Township policy as well as a Fourth Amendment violation.  See Dykes, 68 F.3d at 1568.  Accordingly, Defendants' Motion to Dismiss Counts Two and Three must be denied.

---

[9] Defendants assert that "Plaintiff concedes that the administrator of the breathalyzer did find that reasonable suspicion existed."  (Defs.' Reply 2.)  Plaintiff responds that Defendants' assertion is incorrect.  (Pl.'s Sur-reply 3.)  The Court is unable to locate any statement in the Amended Complaint or in Plaintiff's Response in Opposition that would constitute a concession by Plaintiff that Defendants had reasonable suspicion to require Plaintiff to submit to testing.

Defendants argue that Plaintiff's claims against Defendants McCauley and Swichar in their individual capacities must be dismissed because they are entitled to qualified immunity. (Defs.' Mem. Supp. Mot. Dismiss 13.)  At this stage, it would be premature to find that Defendant McCauley and Defendant Swichar are entitled to qualified immunity, and thus the Motion to Dismiss with respect to the claims against Defendants McCauley and Swichar in their individual capacities is denied.

Defendants also assert that "[a]ny allegations that the breathalyzer was administered improperly do not support a constitutional violation; rather, at most, it may constitute a violation of the [Collective Bargaining Agreement ("CBA")] that is not actionable here."[10]  (Defs.' Mem. Supp. Mot. Dismiss 5; see also Defs.' Reply 2.)  Defendants further assert in their Reply that "[p]ursuant to the explicit terms of the Collective Bargaining Agreement, any violation arising from the administrators [sic] training would necessarily have to be raised as a violation of the Collective Bargaining Agreement, not a constitutional violation" and that Article XXIII of the CBA provides the sole and exclusive remedy for the resolution of disputes arising under or related to the CBA.  (Defs.' Reply 2.)  It is not clear, however, that Plaintiff's § 1983 Fourth Amendment claims would have been subject to the CBA.  Defendants provided an excerpted page from a 2006–2010 Collective Bargaining Agreement that details the Grievance Procedure but which does not indicate that the CBA contained terms and conditions regarding drug and alcohol testing.  (See Defs.' Mem. Supp. Mot. Dismiss Complaint (Docket No. 9), Ex. B, 2006–

---

[10] In support of that contention, Defendants cite an unpublished Southern District of Ohio case without providing any specific page citations or an indication of how that case supports their argument.  (Id. (citing Murray v. City of Columbus, No. 10-Civ.A.797, 2012 WL 4475718 (S.D. Ohio Sept. 26, 2012).)  Even if Defendants had explained how that case might apply to the circumstances here, it is not binding on this Court.

2010 Collective Bargaining Agreement.)[11]  Moreover, the Court cannot determine from Defendants' submission whether there was a Collective Bargaining Agreement in place in 2013 when Plaintiff was required to take the Breathalyzer test, or whether that version of the Collective Bargaining Agreement contained provisions pertaining to drug and alcohol testing. The parties have not indicated whether the Bristol Township drug and alcohol testing policy referenced in the Amended Complaint is part of the Collective Bargaining Agreement or whether it is a separate policy.  Accordingly, on the basis of the CBA excerpt that Defendants submitted, the Court cannot determine its jurisdiction to consider Plaintiff's Fourth Amendment claims under § 1983, and thus declines to grant Defendants' Motion to Dismiss Counts Two and Three on that basis.

###   B.   Search of Private VFW Club to Which Plaintiff Belongs as a Member (Counts IV, V, and VI)

Plaintiff also asserts Fourth Amendment claims via § 1983 against all Defendants for their violations of his reasonable expectation of privacy by subjecting him to a search[12] in a secured members-only facility without a search warrant or other court approval and/or supervision.  (Am. Compl. ¶¶ 130–33, 138–144, 147–154.)  Plaintiff further alleges that Defendant Swichar "provided a knowingly false pretense for seeking entrance to the VFW facility," and did so under instructions from Defendant McCauley.  (Id. ¶¶ 141, 151.)  Plaintiff asserts his Fourth Amendment claims against Defendants McCauley and Swichar in their official and individual capacities.  (Id. ¶¶ 145, 155.)

---

[11] Defendants apparently did not attach the Collective Bargaining Agreement as an exhibit to their Motion to Dismiss the Amended Complaint.  Nonetheless, as a portion of that document was attached as Exhibit B to their Motion to Dismiss the original Complaint, the Court will review the contents of the excerpted pages.

[12] Plaintiff alleges that Defendants conducted a search even though they failed to locate Plaintiff within the VFW facility.  (Am. Compl. ¶ 143.)

Defendants assert that Plaintiff's Fourth Amendment claims related to the "search" of the VFW fail as a matter of law because Plaintiff did not have a reasonable expectation of privacy after entering the VFW; the club's admission of entry to Defendant Swichar constituted consent to his presence; Defendant Swichar's entry under false pretenses would not implicate Plaintiff's Fourth Amendment Rights; and Defendant Swichar's conduct did not actually amount to a "search" because there was no interference with any of Plaintiff's possessory interests.  (See Defs.' Mem. Supp. Mot. Dismiss 5–7.)

Plaintiff responds by arguing that he had a reasonable expectation of privacy while inside a private club that takes the security measures described in the Amended Complaint, and that Defendant Swichar entered under false pretenses and without a warrant or other court approval to conduct a search.  (Pl.'s Resp. Opp'n Mot. Dismiss 16, 18–19.)  Plaintiff notes that the United States Court of Appeals for the Third Circuit has not addressed "the privacy interests of club members within the confines of members-only areas" in a Fourth Amendment context, relying instead on Pennsylvania state court cases addressing motions to suppress evidence obtained during searches by police.  (Id. at 17–18.)  Plaintiff's claims, however, presents unique facts which are distinct from the circumstances analyzed in the cases he cites in support of them.  As Defendants point out, Plaintiff's Fourth Amendment violation claims are presented in the context of a civil matter, the Defendants are not police officers, and the VFW consented to Defendant Swichar's presence in the club based on the reason he provided.  (Defs.' Reply 2.)  While Plaintiff has alleged that Defendant Swichar gained entry to the VFW under false pretenses, Defendant Swichar had express permission to enter the club.  Notably, and as Plaintiff alleged, Defendant Swichar did not even find Plaintiff when he entered the VFW.  Thus, the cases

Plaintiff relies on do not demonstrate that he has stated a legally cognizable Fourth Amendment claim.

Plaintiff also relies on O'Connor v. Ortega for the proposition that the Fourth Amendment is violated where a public employer's search violates an employee's reasonable expectation of privacy, regardless of whether the search is to investigate violations of criminal law or breaches of other statutory or regulatory standards.  (Pl.'s Sur-reply 4 (citing O'Connor, 480 U.S. 709, 715 (1986).)  In O'Connor, however, the Court considered an employee's expectation of privacy in the workplace, where the search of the employee's papers and effects occurred in his office, not at a non-workplace location belonging to the plaintiff or a third-party. Id. at 713.  Thus, O'Connor does not support Plaintiff's attempt to bring Fourth Amendment claims based on Defendant Swichar's entry into the VFW.

In short, Plaintiff has not provided case law support for his claim that a search of a private club by his employer under the circumstances alleged constitutes a violation of his Fourth Amendment rights.  It is not clear how Defendant Swichar's conduct constitutes a Fourth Amendment violation rather than something akin to trespass onto VFW property.  Even then, Defendant Swichar received consent to enter the VFW.  Accordingly, with respect to Counts Four, Five, and Six, Plaintiff has not stated claims for which relief can be granted, and Defendants' Motion to Dismiss those Counts is granted.[13]

### C.    Failure to Train in Violation of § 1983 (Count VII)

Plaintiff asserts that Defendant Bristol Township failed to instruct, supervise, control, or discipline Defendants McCauley and Swichar with regard to alcohol and drug testing of

---

[13] In addition, Count Four, like Count One, is essentially a claim for municipal liability against Bristol Township based on respondeat superior liability, and is dismissible on that ground as well.

employees without reasonable suspicion and in violation of Plaintiff's rights.[14]  (Am. Compl. ¶ 158.)  Plaintiff further alleges that Defendant Bristol Township "knew or should have known that its failure to provide [necessary] training" for testing "would predictably lead to violation of the constitutional rights of employees such as Plaintiff," and that Bristol Township was on notice of that possibility because of a prior settlement agreement related to random testing of employees. (Id. ¶ 159.)  Finally, Plaintiff alleges that Defendant Bristol Township approved or ratified the "unlawful, malicious, reckless, and wanton conduct of Defendants McCauley and Swichar."  (Id. ¶ 162.)[15]

Defendants argue that Plaintiff's failure to train claim must be dismissed because there is no underlying constitutional violation with regard to the alcohol testing,[16] Plaintiff has not identified a municipal policy or custom to support his claims, Plaintiff's allegations that Defendant McCauley was a "final policy decisionmaker" are "grossly insufficient as a matter of law," and Plaintiff failed to allege a pattern or practice sufficient to support a failure to train claim.  (Defs.' Mem. Supp. Mot. Dismiss 7; Defs.' Reply 3–4.)

The Supreme Court has "recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997).  Rather, the Court "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused

_____

[14] Plaintiff also argues that the failure to train claim applies to Defendants' conduct with respect to the "search" of the VFW.  (See Pl.'s Resp. Opp'n Mot. Dismiss 20.)  As Plaintiff's claims related to Defendant Swichar's entry into the VFW are dismissed, there is no underlying constitutional violation to support a failure to train claim on those grounds.

[15] This aspect of Plaintiff's failure to train claim is not supported by the factual allegations in the Amended Complaint.  As the other allegations supporting Count Seven are sufficient to withstand Defendants' Motion to Dismiss, however, this finding is not fatal to Plaintiff's claim.

[16] As Plaintiff's Fourth Amendment claims with respect to the Breathalyzer test are not being dismissed, the Court does not address this aspect of Defendants' argument.

the plaintiff's injury." Id. (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658,

689 (1978); Pembaur v. Cincinnati, 475 U.S. 469, 480–81 (1986); Canton v. Harris, 489 U.S.

378, 389 (1989)).  "A government policy or custom can be established in two ways.  Policy is

made when a 'decisionmaker possess[ing] final authority to establish municipal policy with

respect to the action' issues an official proclamation, policy, or edict."  Andrews v. City of

Phila., 895 F.2d 1469, 1480 (3d Cir. 1990), superseded in part by statute, Civil Rights Act of

1991, Pub.L. No. 102–166, 105 Stat. 1072 (1991) (quoting Pembaur, 475 U.S. at 481).  "[W]here

action is directed by those who establish governmental policy, the municipality is equally

responsible whether that action is to be taken only once or to be taken repeatedly."  Pembaur,

475 U.S. at 481 (1986) "[M]unicipal liability under § 1983 attaches where—and only where—a

deliberate choice to follow a course of action is made from among various alternatives by the

official or officials responsible for establishing final policy with respect to the subject matter in

question."  Id. at 483.  "A course of conduct is considered to be a 'custom' when, though not

authorized by law, 'such practices of state officials [are] so permanent and well settled' as to

virtually constitute law."[17]  Andrews, 895 F.2d at 1480 (quoting Monell, 436 U.S. at 690

(internal citations and quotations omitted)).  "In either of these cases, it is incumbent upon a

---

[17] Plaintiff has only alleged one incident—his own—where the Bristol Township policy on drug and alcohol testing was violated since its adoption, and therefore the allegations in the Amended Complaint are insufficient to support municipal liability against the Township on the basis of a custom of ordering unconstitutional Breathalyzer tests for employees.  See  Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011) ("Similarly, the record is devoid of any evidence that there has been a history of County employees mishandling the production of training videos or videotaping in general; indeed, there is no evidence that there has ever been another incident like the one [the plaintiff] experienced.") (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 823–24 (1985) (stating that a "single incident of unconstitutional activity" is generally insufficient to make out a claim unless there is proof that the incident "can be attributed to a municipal policymaker") (emphasis added)).  As discussed below, Defendant McCauley is not a final decisionmaker, and thus is not a municipal policymaker.

plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom."  Id.

In this case, Plaintiff argues that Defendant McCauley is a final decisionmaker who established a "policy" with respect to alcohol testing in the workplace by ordering Defendant Swichar, who lacked the appropriate training, to conduct a Breathalyzer test on Plaintiff without reasonable suspicion.  (Pl.'s Resp. Opp'n Mot. Dismiss 20.)  The determination of who is a "policymaker" is a question of state law.  Id. at 1481 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 142 (1988)).  "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action."  Id. (emphasis added).  Bristol Township is organized under Pennsylvania's First Class Township Code.  (Accord. Defs.' Reply 3.)  Under that Code, the "corporate power of a township of the first class shall be vested in the board of township commissioners."  53 Pa. Cons. Stat. § 56502.  "[A] township manager shall serve at the pleasure of the board of commissioners."  53 Pa. Cons. Stat. § 56504.  "The powers and duties of the township manager shall be regulated by ordinance," and "[t]he commissioners may delegate, subject to recall, any of their respective non-legislative and non-judicial powers and duties to the township manager."  Id.

Pursuant to the Bristol Township Administrative Code, the Township Manager "shall be the chief executive and administrative official of the Township."  Administrative Code for the Township of Bristol, Art. IV, §5-15.[18]  Some of the executive duties of the Township Manager include:

> A.  To execute all laws and ordinances.
> . . .

---

[18] An electronic version of the Administrative Code for the Township of Bristol is available at http://www.bristoltownship.org/Documents/Council%20Adopted%20Code_030212.pdf.

F.  To <u>make such recommendations to Council concerning policy formulation</u> as he or she deems desirable and keep Council and the public informed as to the conduct of municipal affairs.
. . .
I.  <u>To be responsible to Council for carrying out all policies established by it</u> and for the proper administration of all affairs of the Township within the jurisdiction of Council.
. . .
K.  <u>Developing, justifying and recommending Township objectives and policies to Council</u> and <u>promulgating, implementing and delineating approved policies into operating procedures</u>.
L.  Planning, organizing, administering, and directing all operations under the jurisdiction of the Township.

<u>Id.</u> (emphasis added).  The Administrative Code provisions pertaining to the role of the Township Manager make clear that Defendant McCauley does not have "final, unreviewable discretion" to make policy.  <u>See</u> <u>Andrews</u>, 895 F.2d at 1481.

In addition, Bristol Township had an official policy in place regarding the appropriate procedures for requiring employees to undergo drug and alcohol testing.  (<u>See</u> Am. Compl. ¶ 64.) As discussed above in connection with Count One, finding that Defendant McCauley's decision as Township Manager to order Defendant Swichar to violate that policy was itself a "policy" attributable to Bristol Township would result in an impermissible respondeat superior claim against Defendant Bristol Township.  <u>See</u> <u>Canton</u>, 489 U.S. at 387 ("Nor . . . would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on respondeat superior.").  Accordingly, Plaintiff cannot state a claim for municipal liability against Defendant Bristol Township on the basis that Defendant McCauley acted as a final decisionmaker who can establish policy on behalf of the Township, resulting in a violation of Plaintiff's Fourth Amendment rights.

Though Defendant McCauley did not act as a final decisionmaker, the above discussion does not end the inquiry into the viability of Count Seven.  Although Defendants' arguments

20

focus on the fact that Defendant McCauley is not a final decisionmaker who can establish policy, Plaintiff's specific municipal liability allegations against Defendant Bristol Township are based on its alleged failure to train Defendants McCauley and Swichar in the appropriate administration of the Bristol Township drug and alcohol testing policy.

"[I]f a concededly valid policy is unconstitutionally applied by a municipal employee, the city is liable if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." Canton, 489 U.S. at 387. "[A] municipality can only be liable under § 1983 where the failure to train demonstrates a 'deliberate' or 'conscious' choice by the municipality." Doe, 660 F.3d at 179 (citations omitted). "To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that '(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" Id. at 179–80 (citing Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (additional citation omitted)). "Moreover, the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) (internal citations and quotations omitted).

Here, Plaintiff's allegations have established all the elements of the Third Circuit's test for failure to train claims. First, Bristol Township policymakers knew that their employees would confront a situation where they would need to require employees to undergo drug or alcohol testing, which is evidenced by the establishment of a Township policy regarding such testing. Second, there was a history of employees mishandling situations of drug and alcohol testing, which resulted in the establishment of the Township's policy pursuant to a settlement

21

agreement.  The third element is also present here because the wrong choice by an employee in implementing the policy—for example by ordering an employee to undergo drug or alcohol testing in the absence of reasonable suspicion—could frequently cause the deprivation of employees' Fourth Amendment rights.  Finally, if, as Plaintiff alleges, Defendant Bristol Township failed to train its employees, such as Defendant McCauley and Defendant Swichar, regarding the drug and alcohol testing policy, the deficiency in training would be very closely related to the ultimate constitutional injury that Plaintiff claims.  Defendants have not set forth any arguments regarding any training that Defendants McCauley and Swichar received.  Accordingly, on the basis of Plaintiff's allegations that there was a failure to train, Defendant's Motion to Dismiss with respect to Count Seven must be denied.

### D.       FMLA Violations for Interference by Failing to Process Plaintiff's FMLA Documents (Counts VIII and IX)

Plaintiff claims that Defendant Bristol Township, through Defendant McCauley, violated 29 U.S.C. § 2615(a)(1) by (a) refusing to accept Plaintiff's first submitted Certification of Employee's Serious Health Condition, "dismissing it as 'just' Trigeminal Neuralgia;" (b) failing to provide Plaintiff with written notification that it considered Plaintiff's First Certification incomplete and without indicating what additional information was necessary to make the certification complete and sufficient; (c) failing to sign and process Plaintiff's completed FMLA forms in a reasonable timeframe, thus causing unreasonable delay; (d) incorrectly informing Plaintiff that his FMLA documents had been properly handled and processed when his application was never processed; and (e) failing to notify Plaintiff of any defects in his Second Certification, and failing to notify him what additional information was necessary to make the certification complete and sufficient.  (Am. Compl. ¶¶ 172, 183.)

"In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)). The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To assert an FMLA interference claim, "the employee need not show that he was treated differently than others." Callison, 430 F.3d at 119. "Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Id. at 119–20. Ultimately, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120.

"To prove an interference claim, it is the plaintiff's burden to show (1) he was an eligible employee under the FMLA, (2) defendant was an employer subject to the requirements of the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave notice to the defendant of his intention to take FMLA leave, and (5) the defendant was denied benefits to which he was entitled under the FMLA." Lombardo v. Air Prods. & Chems., Inc., No. Civ.A 05-1120, 2006 WL 1892677, at *3 (E.D. Pa. July 7, 2006) (citation omitted).

Defendants incorrectly assert that Plaintiff failed to establish any of the prima facie elements of an FMLA interference claim. (Defs.' Mem. Supp. Mot. Dismiss 8.) Plaintiff was an FMLA-eligible employee because he had been employed by Bristol Township for longer than twelve months, and had worked at least 1,250 hours during the previous twelve months. (See Pl.'s Resp. Opp'n Mot. Dismiss 24 (citing 29 C.F.R. § 825.110); Am. Compl. ¶¶ 26–27.) Plaintiff alleges that all three named Defendants are employers within the meaning of Family and Medical Leave Act ("FMLA"), and that Defendant Bristol Township may be sued pursuant to 53

Pa. C.S. § 5607(d)(2) and 42 U.S.C. § 1983.  (Am. Compl. ¶¶ 5–9.)  Defendants Bristol

Township and McCauley are covered employers under FMLA.  See 29 U.S.C. §§ 2611(4)(A)(i)–

(ii)(I).  Plaintiff alleges that he was entitled to FMLA leave because he suffers from serious

health conditions that require continuing treatment by a health care provider, specifically

Trigeminal Neuralgia and blood clots.  (Pl.'s Resp. Opp'n Mot. Dismiss 25 (citing 29 C.F.R. §

825.113); Am. Compl. ¶¶ 20–28).)  Thus, on the basis of the Amended Complaint, Plaintiff

established the first three elements of an FMLA interference claim.

 With respect to the fourth element, Defendants assert that Plaintiff submitted incomplete

requests for intermittent leave, and therefore was not entitled to FMLA leave and did not give

proper notice of his intention to take FMLA leave.  (Defs.' Mem. Supp. Mot. Dismiss 8.)

Plaintiff alleges that he provided notice of his intention to take FMLA leave by submitting a

complete and sufficient application for Intermittent FMLA leave, as well as a Certification of

Employee's Serious Health Condition signed by Dr. Dani S. Bidros, which were submitted on

February 19, 2013.  (Pl.'s Resp. Opp'n Mot. Dismiss 25; Am. Compl. ¶ 25.)  Plaintiff submitted

a second Certification on March 4, 2013.  (Am. Compl. ¶ 37.)  Thus, on the basis of Plaintiff's

allegations in the Amended Complaint, Plaintiff has satisfied the fourth element of giving notice

to Defendants of his intent to take FMLA leave.[19]

 As to the fifth element, Defendants argue that Plaintiff has failed to allege that he

suffered a cognizable injury arising from Defendants' alleged interference, and that Plaintiff

voluntarily retired on June 28, 2013.  (Defs.' Mem. Supp. Mot. Dismiss 9.)  Defendants assert,

---

[19] Defendants argue in their Reply that because Plaintiff's certification was insufficient, he was
therefore ineligible for FMLA, and that they provided him with both notice and a reasonable
opportunity to correct it.  (Defs.' Reply 5.)  Defendants further assert that rather than correct his
incomplete FMLA application, Plaintiff voluntarily resigned in order to begin his retirement.
(Id.)  At the motion to dismiss phase, Defendants' unsupported assertions cannot contradict
Plaintiff's allegations in the Amended Complaint.

therefore, that Plaintiff cannot state a valid claim for interference in the absence of any injury.[20] (Id. at 8–9.)  Plaintiff responds by arguing that he suffered multiple injuries as a result of Defendants' alleged interference with his FMLA rights.  First, he was allegedly denied the opportunity to make informed decisions about his leave options and limitations as a result of Defendants' failure to notify him that they considered his FMLA applications and certifications insufficient.  Second, Plaintiff asserts that even though he submitted applications and certifications for FMLA leave, Defendants told him he had exhausted his sick leave and threatened him with disciplinary actions or discharge via a June 18, 2013 letter.  Finally, Plaintiff alleges that he was subject to a constructive discharge because of harassment and retaliation related to his use of sick leave and attempts to use FMLA leave.  (Pl.'s Resp. Opp'n Mot. Dismiss 27.)  Thus, Plaintiff has adequately alleged both a denial of FMLA benefits to which he was entitled, as well as a resulting injury, such that the fifth element of a prima facie case is satisfied.

Plaintiff's allegations are therefore sufficient to establish a prima facie case for his FMLA interference claim against Defendants for their failure to process his FMLA documents. Accordingly, Defendants' Motion to Dismiss with respect to Counts Eight and Nine is denied.

---

[20] Defendants rely on Alifano v. Merck & Co. for the proposition that "[c]ourts have refused to recognize a valid claim for interference in the absence of any injury."  Alifano v. Merck & Co., 175 F. Supp. 2d 792, 794 (E.D. Pa. 2001).  In that case, however, the plaintiff's complaint "[did] not allege that the [d]efendants denied her entitlement to leave nor does it allege that [d]efendants failed to restore her to her previous position. Thus, she ha[d] not successfully alleged any forfeiture of her FMLA rights."  Id.  By contrast, Plaintiff alleged several ways that Defendants denied his entitlements to FMLA leave and several ways in which he was injured by Defendants' interference with his rights under FMLA.  Accordingly, Defendants' reliance on Alifano is misplaced.

**E.**     **FMLA Violations for Interference by Counting FMLA-Qualifying Leave Against Plaintiff (Counts X and XI)**

Plaintiff claims that Defendant Bristol Township and Defendant Swichar violated 29 U.S.C. § 2615(a)(1) by (a) giving Plaintiff a letter informing him that he had exhausted his sick leave, that his sick leave had not been approved, and that he must report to work or face disciplinary action or discharge; (b) failing to provide Plaintiff with written notification that his Certifications were incomplete and failing to inform him about what additional information was necessary, as required by 29 C.F.R. § 825.305(c); and (c) by counting FMLA-qualifying leave against Plaintiff for purposes of disciplinary action and termination.  (Am. Compl. ¶¶ 188, 189–193, 197, 198–202.)

Defendants made the same arguments urging dismissal of Counts Ten and Eleven as those discussed above with regard to Counts Eight and Nine, and Plaintiff relied on the same arguments in response.  Accordingly, for the same reasons stated above, Plaintiff sufficiently alleged claims for FMLA interference in Counts Ten and Eleven.  Thus, Defendants' Motion to Dismiss with respect to Counts Ten and Eleven is denied.

**F.**     **FMLA Violations for Interference by Requiring Plaintiff to Obtain a Second Certification of Serious Medical Condition in Violation of 29 U.S.C. 2615(a)(1) (Counts XII and XIII)**

Plaintiff alleges that Defendant Bristol Township and Defendant William McCauley violated 29 U.S.C. § 2615(a)(1) by requiring Plaintiff to obtain a Second Certification of Employee's Serious Health Condition, failing to inform Plaintiff in writing that the First Certification was insufficient or incomplete, and by not providing Plaintiff with written notification of what additional information would be needed to make the certification complete and sufficient, as is required by 29 C.F.R. § 825.307(b)(1).  (Am. Compl. ¶¶ 206–213, 217–223.)

Plaintiff further alleges that Defendant Bristol Township did not cover the costs Plaintiff

incurred in obtaining a Second Certification.  (Id. ¶ 224.)

      29 C.F.R. § 825.307(b)(1) provides that:

> An employer who has reason to doubt the validity of a medical
> certification may require the employee to obtain a second opinion
> at the employer's expense. Pending receipt of the second (or third)
> medical opinion, the employee is provisionally entitled to the
> benefits of the Act, including maintenance of group health
> benefits. If the certifications do not ultimately establish the
> employee's entitlement to FMLA leave, the leave shall not be
> designated as FMLA leave and may be treated as paid or unpaid
> leave under the employer's established leave policies.

29 C.F.R. § 825.307.[21]

      Defendants made the same arguments urging dismissal of Counts Twelve and Thirteen as

they did for Counts Eight, Nine, Ten, and Eleven, and Plaintiff asserted the same arguments in

response.  Accordingly, for the same reasons stated above, Plaintiff sufficiently alleged claims

for FMLA interference and Defendants' Motion to Dismiss with respect to Counts Twelve and

Thirteen is denied.

      **G.**      **FMLA Violations for Retaliation (Counts XIV, XV, and XVI)**

      Plaintiff's final category of FMLA claims are against Defendants Bristol Township,

McCauley, and Swichar for retaliation in violation of 29 U.S.C. § 2615(a)(2) for taking adverse

action against Plaintiff for requesting and/or using FMLA leave.  (Am. Compl. ¶¶ 231–32, 240–

41, 251–52.)  Plaintiff alleges that (1) Defendants Bristol Township and McCauley harassed

Plaintiff about the severity of his condition, including by telling Plaintiff that he would not be

---

[21] See also 29 U.S.C.A. § 2613 ("In any case in which the employer has reason to doubt the
validity of the certification provided under subsection (a) of this section for leave under
subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the
expense of the employer, that the eligible employee obtain the opinion of a second health care
provider designated or approved by the employer concerning any information certified under
subsection (b) of this section for such leave.").

approved for FMLA leave for "just" Trigeminal Neuralgia, and by requiring him to obtain a Second Certification; (2) all Defendants conducted undue and harassing surveillance of Plaintiff; (3) all Defendants forced Plaintiff to undergo an unnecessary and baseless Breathalyzer test during work hours "for the purpose of harassment;" (4) all Defendants threatened Plaintiff with disciplinary action or discharge for using FMLA leave, and (5) Defendant McCauley refused to provide written notice to Plaintiff that his FMLA application was incomplete and that additional information was necessary to make it complete and sufficient. (Id. ¶¶ 231, 240, 251.) Plaintiff alleges further that the conditions of his employment became so intolerable that a reasonable person in Plaintiff's situation would be forced to resign, and that, under the circumstances, Plaintiff's resignation on June 18, 2013 was involuntary and amounted to a constructive discharge. (Id. ¶¶ 233–34, 242–43, 253–254.)

The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To establish a prima facie case of retaliation[22] under FMLA, Plaintiff must show that "(1) []he invoked [his] right to FMLA-qualifying leave,[23] (2) []he suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d

---

[22] "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), while claims based on direct evidence have been assessed under the mixed-motive framework set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 276–77 (1989) (O'Connor, J., concurring)." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). At the motion to dismiss phase, Plaintiff need only establish a prima facie case of retaliation under FMLA.

[23] As discussed above, Plaintiff's allegations satisfy the first element that he was qualified to take FMLA leave and that he had invoked his right to do so.

Cir. 2012).  "[T]he elements of a prima facie case depend on the facts of the particular case."

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999).

Defendants argue that Plaintiff has failed to establish a prima facie case of retaliation

because Plaintiff voluntarily left his position in order to retire and therefore no adverse

employment action took place.  (Defs.' Mem. Supp. Mot. Dismiss 9.)  According to Defendants,

Plaintiff's voluntarily retirement constituted an intervening event similar to "job abandonment"

that broke the causal link between the protected activity and the adverse employment action.  (Id.

(citing Weiler v. R&T Mech., Inc., 255 F. App'x 665, 668–69 (3d Cir. 2007)).)

An adverse employment action is "an action by an employer that is serious and tangible

enough to alter an employee's compensation, terms, conditions, or privileges of employment."

Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004), as amended (Dec. 20, 2004)

(quotations omitted).  "To find constructive discharge, a court 'need merely find that the

employer knowingly permitted conditions of discrimination in employment so intolerable that a

reasonable person subject to them would resign.'"  Lebofsky v. City of Phila., 394 F. App'x 935,

939 (3d Cir. 2010) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984).

Plaintiff alleges that Defendants harassed him about the severity of his medical condition

and required him to obtain an additional certification, conducted "undue and harassing"

surveillance of him, forced him to undergo "an unnecessary and baseless" Breathalyzer test

during work hours for the purpose of harassment, and threatened him with disciplinary action or

discharge for using FMLA eligible leave.  (Pl.'s Resp. Opp'n Mot. Dismiss 29–30.)  Plaintiff

further alleges that "as a direct result" of Defendants' actions, he was forced to resign due to

intolerable employment conditions and that as such, his resignation was involuntary and

amounted to a constructive discharge.  (Id. at 30.)  Plaintiff's claim that he was constructively

discharged undermines Defendants' argument that the intervening event of Plaintiff's resignation prevents him from stating an FMLA retaliation claim. On the basis of Plaintiff's allegations, therefore, the constructive discharge that ended his employment with Bristol Township was not an intervening event, but rather was an adverse employment action that establishes the second element of a prima facie case of FMLA retaliation.

Defendants argue in the alternative that, if an adverse employment action did take place, it occurred more than three months after Plaintiff "allegedly submitted" incomplete applications for FMLA leave, resulting in "insufficient temporal proximity present under the circumstances to establish a claim for retaliation." (Id. (citing Allen v. Nutrisystem, Inc., No. Civ.A. 11-4107, 2013 WL 1776440, at *8 (E.D. Pa. Apr. 25, 2013) for the proposition that two months is too long to demonstrate causation between protected activity and retaliation).) Thus, according to Defendants, Plaintiff cannot establish the causation element of the prima facie case.

In the Third Circuit, there are "two main factors in finding the causal link necessary for retaliation: 'timing and evidence of ongoing antagonism.'" Miller v. Thomas Jefferson Univ. Hosp., 565 F. App'x 88, 91 (3d Cir. 2014) (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001). To establish a causal link and thus state a prima facie case of retaliation, "temporal proximity between the protected activity and the termination is sufficient." Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, (2006); see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (discussing the general requirement that timing be "unusually suggestive" but noting that "temporal proximity alone, when 'very close,' can in some instances establish a prima facie case of retaliation.") (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). "A plaintiff can [also]

establish a link between his or her protected behavior and subsequent discharge if the employer

engaged in a pattern of antagonism in the intervening period." Id. at 920–21 & n.3 (noting that

because "the evidence is sufficient to establish a pattern of antagonistic behavior linking the

discrimination complaints and [the plaintiff's] discharge, we need not consider whether other

types of evidence might also support a causal link finding in the absence of temporal

proximity."); see also Reaves v. Pa. State Police, No. Civ. A. 14-1555, 2015 WL 109833, at *5

(3d Cir. Jan. 8, 2015). ("Such evidence may include a temporal proximity between the protected

activity and the adverse action, antagonistic behavior on the part of the employer, inconsistencies

in the employer's articulated reasons for taking the adverse action, or any other evidence that

supports an inference of retaliatory animus.")

     Plaintiff argues that Defendants' conduct, as described above, shows that he experienced

ongoing antagonism between the time that he first sought FMLA benefits on the basis of his

Trigeminal Neuralgia and the date on which he alleges he was constructively discharged.  (Pl.'s

Resp. Opp'n Mot. Dismiss 30–31.)  Plaintiff first applied for intermittent FMLA leave on

February 19, 2013, after which he was required to submit a second certification.  After Plaintiff

called in sick because of a flare-up of his condition on June 6, 2013, Defendants surveilled him

and required him to take a Breathalyzer test at work.  Then, on June 18, 2013, Plaintiff was told

that he could not take one day of FMLA leave as requested, and that he would face disciplinary

action or discharge if he did not report to work.  Plaintiff resigned that same day, constituting

what Plaintiff alleges was a constructive discharge.  Plaintiff has therefore sufficiently alleged

facts demonstrating that he experienced ongoing antagonism during a four-month period, which

was causally related to the invocation of his FMLA rights, and thus has established the third

element of a prima facie case of retaliation.

Defendants next argue that Plaintiff's FMLA retaliation claim must be dismissed because it does not meet the "but-for" causation standard articulated by the United States Supreme Court. (Defs.' Reply 5 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013)).)  In Nassar, the Court stated that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)."  Id. at 2533.  While some courts within the Third Circuit have applied Nassar to FMLA claims in addition to Title VII claims, other courts have merely noted that the Third Circuit has not yet reached the issue of whether Nasser applies to retaliation claims other than those brought under Title VII.  See, e.g., Latta v. U.S. Steel-Edgar Thompson Plant, No. Civ.A. 11-1622, 2013 WL 6252844, at *5 (W.D. Pa. Dec. 4, 2013) (citing Nasser and stating that plaintiff must prove traditional "but-for" causation in FMLA claim); Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 705 (W.D. Pa. 2014) (finding it likely that the Third Circuit would apply Nasser to ADA claims in addition to Title VII claims because "the language of the ADA's anti-retaliation provision is almost identical"); Berkowitz v. Oppenheimer Precision Prods., Inc., No. Civ.A. 13-4917, 2014 WL 5461515, at *8 (E.D. Pa. Oct. 28, 2014) (doubting whether in that case imposing a "but-for" standard to the plaintiff's ADA and FMLA claims would have any effect on resolution of the pending summary judgment motion because the plaintiff's claims survived regardless of whether Nasser applied).

In this case, three of the five factual allegations underpinning Plaintiff's FMLA retaliation claim are directly connected to Plaintiff's requests to use FMLA leave, and the conduct alleged would not have occurred in the absence of Plaintiff's FMLA leave requests.  As Plaintiff argued in his Sur-reply, he "alleged employment actions for which his request for FMLA leave" would satisfy a "but-for" causation standard.  (Pl.'s Sur-reply 8.)  Specifically, in

arguing that he established "but-for" causation, Plaintiff points to Defendants' refusal to approve his FMLA request because it was "just" Trigeminal Neuralgia, Defendants' requirement that he obtain a second certification, and Defendants' threats of disciplinary action or discharge if he missed work when he requested FMLA leave on June 18, 2013.  (Id. at 8–9.)  As stated above, it is not clear whether the "but-for" causation standard articulated in Nassar applies to an FMLA retaliation claim.  Nonetheless, if it does, Plaintiff's allegations are sufficient to survive a motion to dismiss, and are also sufficient to establish the third element of a prima facie case—that "the adverse action was causally related to [his] invocation of rights."  Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d at 302.

Finally, in their Reply, Defendants argue that Plaintiff's Amended Complaint and Response "are replete with allegations that he allegedly suffered an adverse employment action due to personal conflicts with several employees, including the individual Defendants," and that therefore "Plaintiff's retaliation claim does not have a good faith basis to survive [a motion to dismiss] because, at most, his purported request for FMLA was merely a motivating factor to any alleged adverse employment action."  (Defs.' Reply 5–6.)  Defendants' characterization of Plaintiff's factual allegations as evidence of "personal conflicts" is not substantiated by the contents of the Amended Complaint or the parties' briefs, and that characterization does not negate Plaintiff's allegations that Defendants acted contrary to the FMLA prohibitions against retaliation.  As Plaintiff has established a prima facie case of retaliation, this argument is not persuasive.

Accordingly, on the basis of the above discussion, Plaintiff established a prima facie case of retaliation in violation of the FMLA, and Defendants' Motion to Dismiss with respect to Counts Fourteen, Fifteen, and Sixteen is denied.

### H. **Breach of Contract (Count XVII)**

Plaintiff also asserts a breach of contract claim against Defendant Bristol Township for failure to provide him with payment for accrued and unused vacation time totaling $3,237.18, which Plaintiff maintains is in violation of the Collective Bargaining Agreement ("CBA") between the Transportation Workers Union of America, Local 281, and Defendant Bristol Township.  (Am. Compl. ¶¶ 256–59.)  Defendant Bristol Township urges dismissal of this claim, arguing that, under Pennsylvania law, a union employee cannot state a claim for breach of a CBA against an employer, and that allegations of a breach of contract should be resolved by an arbitrator pursuant to the CBA's grievance procedures.  (Defs.' Mem. Supp. Mot. Dismiss 10 (citing Philips v. Babcock & Wilcox, 503 A.2d 36, 38 (Pa. Super. 1986), appeal denied, 521 A.2d 933 (Pa. 1987); AFSCME v. Pa. Labor Rels. Bd., 41 A.3d 213, 217 (Pa. Commw. Ct. 2012)).)  Defendant asserts that Article XXIII of the CBA provides that "the sole and exclusive remedy for the resolution of any disputes or disagreements or claims made under or related to the Agreement or arising is the grievance and arbitration procedure set forth in the Agreement."  (Id. at 10 (citing Defs.' Ex. B,[24] 2006–2010 Collective Bargaining Agreement, at Article XXIII).)

Defendants' Exhibit B is the cover page and one excerpted page from the Collective Bargaining Agreement for January 1, 2006 to December 31, 2010.  (Defs.' Ex. B at Cover Page.) Defendants do not indicate whether this particular version of the CBA was still in effect in 2013 at the time that Plaintiff's claims arose.  Even assuming that the language regarding grievance procedures in whatever CBA was in effect in 2013 is identical to the language in Article XXIII of the 2006-2010 CBA, it is not clear that the grievance procedure applies to Plaintiff's claim

---

[24] As previously stated, Defendants did not attach the Collective Bargaining Agreement as an exhibit to their Motion to Dismiss the Amended Complaint; however as a portion of that document was attached as Exhibit B to their Motion to Dismiss the Complaint, the Court will review the excerpted pages and consider their contents.

regarding accrued and unused vacation time because there is no mention of any policy regarding accrued and unused vacation time on the only page of the CBA included in Exhibit B.  Plaintiff has alleged that, pursuant to the Collective Bargaining Agreement, presumably the version in effect in 2013, Bristol Township is required to provide bargaining unit member employees with one hundred percent of accrued and unused vacation time upon resignation or retirement.  (Am. Compl. ¶ 90.)  On that basis, and in light of Defendant Bristol Township's argument, it is likely that there was a Collective Bargaining Agreement in effect at the time that Plaintiff tendered his resignation, and that payment of accrued and unused vacation time was a term or condition of that agreement.  However, as neither party has submitted documentation demonstrating that arbitration is the exclusive means by which Plaintiff may pursue that claim, Defendants' Motion to Dismiss Count Seventeen must be denied.

## I.      ADEA Violation for Disparate Treatment (Counts XVIII, XIX, and XX)

Plaintiff asserts claims that Defendants violated the Age Discrimination in Employment Act ("ADEA") as follows: (1) Defendants Bristol Township and Defendant McCauley failed and refused to process Plaintiff's FMLA application, even though they had done so for employees younger than Plaintiff; (2) Defendants Bristol Township and McCauley required Plaintiff to obtain a Second Certification of Employee's Serious Health Condition, even though they did not do so for employees younger than Plaintiff; (3) Defendants Bristol Township and McCauley refused to provide written notice that they considered Plaintiff's FMLA application incomplete, even though they had done so for employees younger than Plaintiff; (4) Defendants Bristol Township and McCauley failed to provide Plaintiff with payment for accrued and unused vacation time, even though they had done so for employees younger than Plaintiff; (5) all Defendants ordered Plaintiff to undergo "an illegal" Breathalyzer test during work hours, even

though they did not subject employees younger than Plaintiff to "illegal" Breathalyzer tests during work hours despite suspicion of alcohol use; and (6) all Defendants threatened Plaintiff with termination or discipline for being absent from work in spite of his qualification for FMLA leave, when they did not similarly threaten employees younger than Plaintiff.  (Am. Compl. ¶ 263–68, 277–82.)  Plaintiff further alleges that as a result of Defendants' conduct, Plaintiff's conditions of employment became so intolerable that a reasonable person in Plaintiff's situation would be forced to resign such that Plaintiff's resignation was involuntary and amounted to a constructive discharge.  (Id. ¶¶ 272–73; 286–87; 296–97.)

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added).  "In an ordinary employment termination case under the ADEA to establish a prima facie case of age discrimination at the first step of the McDonnell Douglas burden shifting framework a plaintiff must show that he or she: (1) was a member of the protected class, i.e., was over 40 [years old], (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination."  Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004).  In the context of an ADEA claim where the plaintiff claims discrimination on grounds other than termination or failure to hire, the fourth element of the prima facie case can be satisfied with a showing that "a sufficiently younger person . . . was not subjected to the adverse action."  See Madden v. Runyon, 899 F. Supp. 217, 223 (E.D. Pa. 1995).  "When, as here, a plaintiff alleges that he has suffered age discrimination predicated on disparate treatment,

liability under the ADEA depends on whether age 'actually motivated the employer's decision.'"
Id. (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)) (additional citation omitted).

Defendants first argue that Plaintiff's ADEA disparate treatment claims must be
dismissed based on case law which applies to disparate impact claims.  (See Defs.' Mem. Supp.
Mot. Dismiss 11–12.)  As Defendants' argument applies the incorrect legal analysis, the Court
does not address it.  Defendants then argue in their Reply that Plaintiff's claims must be
dismissed because he has failed to set forth any allegations either that he was replaced by a
younger employee or that he was treated less favorably than younger comparators.  (Defs.' Reply
6.)  In fact, Plaintiff's Amended Complaint contains more than thirty paragraphs of allegations
pertaining to his ADEA claims, and, as Plaintiff points out, "[t]he specific younger employees
who were treated more favorably than Plaintiff in similar situations are identified by initial."
(Pl.'s Sur-reply 10.)  Defendants are correct, however, that Plaintiff does not allege that he was
replaced by a younger employee.  The absence of any such allegation results in a failure to
establish a prima facie case for constructive discharge, but it is not fatal to Plaintiff's claim to the
extent that his allegations establish that he was "otherwise discriminate[d]" against.

Plaintiff should note that in order to prove the alleged ADEA violations, he will need to
show that Defendants' conduct was motivated by age and that he experienced disparate treatment
"because of" age.  Nonetheless, Plaintiff has established a prima face case of disparate treatment
under the ADEA, which is sufficient to survive a motion to dismiss.  Thus, Defendants' Motion
to Dismiss with respect to Counts Eighteen, Nineteen, and Twenty is denied.

## J.  Punitive Damages Claims

Finally, Defendants argue that Plaintiff's punitive damages claims must be dismissed on
numerous grounds.  Defendants first point out that punitive damages are not available under the

ADEA or FMLA, which Plaintiff conceded in his Sur-reply.  (See Defs.' Mem. Supp. Mot.

Dismiss 12; Pl.'s Sur-reply 11.)  Accordingly, Plaintiff's claims for punitive damages in

connection with Counts Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen,

Eighteen, Nineteen, and Twenty are dismissed.  Defendants also assert that punitive damages are

not available in connection with Plaintiff's breach of contract claim.  (Defs.' Mem. Supp. Mot.

Dismiss 12), an argument to which Plaintiff did not respond.  Defendants are correct that

according to Pennsylvania law, Plaintiff's claim for punitive damages in connection with Count

Seventeen must be dismissed.  See Johnson v. Hyundai Motor Am., 698 A.2d 631, 639 (Pa.

Super. 1997) ("The law of Pennsylvania clearly provides, however, that punitive damages are not

recoverable in an action solely based upon breach of contract.") (citing Thorsen v. Iron and Glass

Bank, 476 A.2d 928, 932 (Pa. Super. 1984)) (additional citation omitted); see also Yellow

Transp., Inc. v. DM Transp. Mgmt. Servs., Inc., No. Civ.A. 06-1517, 2006 WL 2871745, at *4

(E.D. Pa. July 14, 2006) (noting that "punitive damages are unavailable for a breach of contract

action under Pennsylvania law.") (citations omitted).

Defendants also argue that Plaintiff's claims for punitive damages in connection with his

§ 1983 claims, for Fourth Amendment violations and his failure to train claim, must also be

dismissed on the grounds that (1) punitive damages are not available against governmental

entities or officers acting in their official capacities and (2) Plaintiff has not pled sufficient

allegations against Defendants McCauley and Swichar to support punitive damages claims

against them in their individual capacities.  (Defs.' Mem. Supp. Mot. Dismiss 13.)  Defendants

are correct that Plaintiff may not assert punitive damages claims against Defendant Bristol

Township or against Defendants McCauley and Swichar in their official capacities.  See Smith v.

Borough of Dunmore, 633 F.3d 176, 183 (3d Cir. 2011) (stating that "a municipality is immune

from punitive damages under 42 U.S.C. § 1983") (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)); Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities.").

With respect to Plaintiff's claims for punitive damages against Defendants McCauley and Swichar in their individual capacities, Defendants argue that they were acting in their official capacities and that Plaintiff did not sufficiently allege "that their actions involved reckless or callous indifference to Plaintiff's federally protected rights."  (Defs.' Mem. Supp. Mot. Dismiss 13.)  Plaintiff responds by arguing that Defendants McCauley and Swichar showed callous disregard for Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure when they ordered that Plaintiff be required to take a Breathalyzer test without reasonable suspicion and in the absence of proper training for supervisors.  (Pl.'s Resp. Opp'n Mot. Dismiss 37–38.)  In order "for a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous."  Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989) (citing Smith v. Wade, 461 U.S. 30, 56 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.")).  "Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard."  Id.  At the motion to dismiss phase, and in light of Plaintiff's allegations supporting Counts Two and Three, the Court declines to dismiss Plaintiff's claim for punitive damages against Defendants McCauley and Swichar in their individual capacities for alleged violations of Plaintiff's Fourth Amendment rights.

**IV.     CONCLUSION**

In light of the foregoing, Defendants' Motion to Dismiss is granted in part and denied in part.  Defendants' Motion is granted with respect to Counts One, Four, Five, and Six, which are dismissed pursuant to Rule 12(b)(6).  Defendants' Motion is denied with respect to Counts Two, Three, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, and Twenty.

An appropriate Order follows.